# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :
                                :
         -v.-                   :
                                :      INFORMATION
ANIL KUMAR,                     :
                                :      10 Cr. ___
              Defendant.        :
                                :
                                :
- - - - - - - - - - - - - - - - x

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

The United States Attorney charges:

### Relevant Entities and Individuals

1.  From in or about 1986 to in or about late 2009, ANIL KUMAR, the defendant, worked at McKinsey & Company, Inc. ("McKinsey"), a global management consulting firm. From in or about 1997 to in or about late 2009, KUMAR served as a senior partner and director of McKinsey. In that capacity, KUMAR advised various clients in the technology industry concerning their business strategies, including potential acquisitions and reorganizations.

2.  At all times relevant to this Information, the Galleon Group ("Galleon") operated a family of hedge funds based in New York, New York. Galleon Management, L.P., of which Raj Rajaratnam ("Rajaratnam"), a co-conspirator not named as a defendant herein, was a partner, operated as the General Manager for certain of Galleon's hedge funds. Those funds included

Galleon Technology Partners II, LP, Galleon Technology Offshore Ltd. and related funds whose strategy involved primarily trading securities of technology companies (the "Galleon Technology Funds").

3. At all times relevant to this Information, Rajaratnam served as the portfolio manager for the Galleon Technology Funds and was responsible for directing trading in those funds. Rajaratnam and ANIL KUMAR, the defendant, met in or about the early 1980s while they both attended the same business school in the United States.

### The Insider Trading Scheme

4. From in or about 2003 through in or about October 2009, ANIL KUMAR, the defendant, Rajaratnam, and others known and unknown, conspired to engage in insider trading involving securities of certain public companies in the United States. In furtherance of the conspiracy, KUMAR obtained material, nonpublic information ("Inside Information") from clients of McKinsey and provided that information to Rajaratnam with the understanding that Rajaratnam would trade in securities on the basis of that information. KUMAR was prohibited by McKinsey from using any Inside Information obtained in the course of his employment at McKinsey for his own direct or indirect financial benefit, from trading on the basis of Inside Information obtained from McKinsey and its clients, and from disclosing such Inside Information to

others for personal benefit. KUMAR further owed fiduciary and other duties of trust and confidence to McKinsey and its clients to, among other things, maintain the confidentiality of all Inside Information entrusted to McKinsey by its clients and not to use that Inside Information for his own direct or indirect personal benefit or in connection with the purchase or sale of any security.

5. ANIL KUMAR, the defendant, provided this Inside Information to Rajaratnam because Rajaratnam paid KUMAR amounts up to $1 million in certain years in exchange for the information, because KUMAR was an indirect investor in Galleon, because of KUMAR's personal relationship with Rajaratnam, and because KUMAR wanted to please Rajaratnam in his capacity as a partner at Galleon, which was at times a client of McKinsey. Rajaratnam in turn caused the Galleon Technology Funds to buy and sell securities on the basis of the Inside Information provided by KUMAR, thereby netting the Galleon Technology Funds at least $19.7 million in illegal profits.

6. Specifically, in or about 2003, Rajaratnam approached ANIL KUMAR, the defendant, and offered to pay KUMAR up to $500,000 per year for information KUMAR obtained from McKinsey's clients. In order to avoid detection and conceal their scheme, Rajaratnam proposed to pay KUMAR through a third party located overseas. To further conceal the scheme, Rajaratnam also

proposed that the payments to KUMAR be reinvested in Galleon for the benefit of KUMAR but in the name of some third party who was not a United States citizen. After accepting Rajaratnam's proposal, KUMAR arranged to have an overseas entity receive payments from Rajaratnam through an account located in Switzerland. KUMAR also arranged, and informed Rajaratnam that he had arranged, to have these funds invested in Galleon under the name of a domestic worker employed by KUMAR (the "Domestic Worker").

7. After this arrangement was in place, during in or about 2003 through in or about 2006, Rajaratnam asked ANIL KUMAR, the defendant, for Inside Information about the financial performance and business activities of various McKinsey clients. In response, and in return for the payments referenced in paragraph 6 above, KUMAR supplied Rajaratnam with confidential information obtained from various McKinsey clients. For example, in or about 2004, prior to any public announcement, and understanding that it constituted Inside Information, KUMAR informed Rajaratnam that Advanced Micro Devices ("AMD"), a designer and manufacturer of computer microprocessors, had successfully reached agreements to become a supplier for a large computer manufacturer. Thereafter, Rajaratnam informed KUMAR that he had profited based on the Inside Information. In exchange for supplying Inside Information during in or about 2003 through in or

4

about 2006, Rajaratnam paid KUMAR in the manner described in paragraph 6 above, and those payments were subsequently reinvested for KUMAR's benefit in one or more Galleon funds under the name of the Domestic Worker.

8. In or about the end of 2005, ANIL KUMAR, the defendant, in his role as a director of McKinsey, began advising AMD concerning a potential acquisition by AMD of a graphics company. By in or about March 2006, AMD had focused on attempting to acquire the graphics company ATI Technologies Inc. ("ATI") and was involved in confidential negotiations to acquire ATI. KUMAR provided Rajaratnam with this Inside Information and, in or about March 2006, the Galleon Technology Funds invested in ATI. Over the course of the next several months, AMD continued to negotiate with ATI, KUMAR continued to provide Rajaratnam with Inside Information about the progress of those negotiations, and the Galleon Technology Funds, at Rajaratnam's direction, continued to accumulate ATI stock.

9. On or about July 24, 2006, AMD announced publicly that it had reached a deal to acquire ATI's outstanding common stock for a substantial premium over the prior day's trading price. The price of ATI's stock rose significantly on this news and, that same day, the Galleon Technology Funds sold all of the holdings in ATI that those funds had accumulated over the previous several months, thereby realizing approximately $19.2 million in

illegal profits. At or about the end of 2006, Rajaratnam told ANIL KUMAR, the defendant, that he wanted to pay KUMAR a "bonus" of $1 million, but that he needed to determine a way to make the payment. Galleon subsequently wire transferred $1 million into an overseas account held by KUMAR.

10. In or about 2007, the Securities and Exchange Commission was investigating Galleon and took sworn testimony from Rajaratnam. That same year, Rajaratnam told ANIL KUMAR, the defendant, that because Galleon was subject to greater scrutiny, KUMAR should find an entity to replace the Domestic Worker as the nominal holder of KUMAR's investment in Galleon. KUMAR thereafter switched the nominal holder of his Galleon investment to an overseas entity.

11. During in or about 2007 and in or about 2008, ANIL KUMAR, the defendant, in his role as a director of McKinsey, advised AMD concerning its strategy of spinning off its manufacturing business but retaining its design business. KUMAR informed Rajaratnam of AMD's strategy. KUMAR further told Rajaratnam that such a transaction would likely save AMD from going out of business because it would allow AMD to, among other things, eliminate significant costs and raise significant capital to develop new products. During 2008, in accordance with this strategy, AMD negotiated with various entities to sell its manufacturing business and raise investment capital. KUMAR

provided Rajaratnam with Inside Information concerning the progress of these negotiations on an ongoing basis.

12. During in or about August, September and October of 2008, Rajaratnam caused the Galleon Technology Funds to invest tens of millions of dollars in AMD securities. On or about October 7, 2008, AMD publicly announced plans to spin off its manufacturing operations to an entity based in Abu Dhabi and to receive an investment from another entity in Abu Dhabi. That same day, AMD's stock opened up approximately 25 percent over the prior day's closing price. Nonetheless, due to a broad decline in the financial markets in September and October 2008, the Galleon Technology Funds did not profit much, if at all, from trading in AMD securities based in part on the Inside Information described above.

13. From in or about 2007 through in or about October 2009, ANIL KUMAR, the defendant, continued to supply other Inside Information to Rajaratnam, including information about AMD's financial performance and information about other McKinsey clients. For example, on or about October 2, 2008, KUMAR learned from a McKinsey client, which is a subsidiary of eBay Inc. ("eBay"), that eBay planned to announce substantial layoffs the following Monday, October 6, 2008, and that this information was confidential. On or about October 3, 2008, KUMAR called Rajaratnam and provided him with this Inside Information. Later

that day Rajaratnam caused the Galleon Technology Funds to sell short shares of eBay common stock. On or about the following Monday, October 6, 2008, eBay publicly announced a significant reduction in its workforce. Rajaratnam thereafter caused the Galleon Technology Funds to close out their short positions. As a result, those funds realized approximately $500,000 in illegal profits.

14. Over the course of the conspiracy from in or about 2003 through in or about October 2009, Rajaratnam paid ANIL KUMAR, the defendant, approximately $1.75 million to $2 million in compensation for providing Inside Information to Rajaratnam. As a result of reinvesting a portion of that compensation in a nominee account at Galleon, KUMAR received a total of approximately $2.6 million from his participation in this scheme.

### The Conspiracy

15. From at least in or about 2003 up to and including in or about October 2009, in the Southern District of New York and elsewhere, ANIL KUMAR, the defendant, Raj Rajaratnam, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

## Object of the Conspiracy

16. It was a part and an object of the conspiracy that ANIL KUMAR, the defendant, Raj Rajaratnam, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

## Means and Methods of the Conspiracy

17. Among the means and methods by which ANIL KUMAR, the defendant, Raj Rajaratnam, and their co-conspirators would and did carry out the conspiracy were the following:

    a.    KUMAR obtained Inside Information from clients

of McKinsey and provided this information to Rajaratnam with the understanding that Rajaratnam would use the information to execute securities transactions. KUMAR supplied the Inside Information to Rajaratnam in violation of fiduciary and other duties of trust and confidence owed both to McKinsey and to its clients.

   b. Rajaratnam executed securities trades based on the Inside Information from his offices located in New York, New York.

   c. Rajaratnam provided monetary compensation to KUMAR in exchange for the Inside Information.

### Overt Acts

   18. In furtherance of the conspiracy and to effect the illegal object thereof, ANIL KUMAR, the defendant, Raj Rajaratnam, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

   a. In or about 2006, KUMAR spoke to Rajaratnam on the telephone about AMD's planned acquisition of ATI.

   b. In or about 2006, Rajaratnam executed transactions in the securities of ATI.

(Title 18, United States Code, Section 371.)

### COUNT TWO

(Securities Fraud)

The United States Attorney further charges:

   19. The allegations contained in paragraphs 1-14, 17

and 18, are repeated and realleged as though fully set forth herein.

20. In or about 2006, in the Southern District of New York and elsewhere, ANIL KUMAR, the defendant, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, KUMAR supplied Inside Information concerning AMD's planned acquisition of ATI to Rajaratnam, which Rajaratnam in turn used to execute transactions in the securities of ATI.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5 and
10b5-2; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

21. As a result of committing one or more of the foregoing securities fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 18, United States Code, Section 371, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 10b5-2, as alleged in Counts One and Two of this Information, ANIL KUMAR, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, the proceeds that KUMAR received, as well as gain on investments derived therefrom, as a result of committing the securities fraud offenses charged in Counts One and Two of this Information.

### Substitute Assets Provision

22. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

12

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 15, United States Code, Sections 78j(b), 78ff;
Title 18, United States Code, Sections 371 and 981(a)(1)(C);
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461(c);
and Title 17, Code of Federal Regulations,
Sections 240.10b-5 and 10b5-2.)

*[signature]*
PREET BHARARA
United States Attorney