

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
3 WORLD FINANCIAL CENTER, RM 400
NEW YORK, NEW YORK 10281-1022

January 20, 2010

**Via Facsimile**

The Honorable Jed S. Rakoff
United States District Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:   *SEC v. Galleon Management, LP et al.; 09 Civ. 8811 (JSR)*

Dear Judge Rakoff:

    Certain defendants have in their possession recorded communications and related materials (the "wiretap materials") relevant to this civil action. The United States Attorney's Office for the Southern District of New York ("USAO"), which is pursuing parallel criminal proceedings against these defendants, provided them with the wiretap materials pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A §§ 2510-2522 ("Title III"), and Rule 16 of the Federal Rules of Criminal Procedure. The Commission understands that the USAO provided the wiretap materials to defendants without a protective order. The Commission has demanded those wiretap materials pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 34. Despite their obligations to do so under the Federal Rules, defendants have refused to produce the wiretap materials. The Commission respectfully requests that the Court order defendants immediately to produce these materials to the Commission.[1]

    The Federal Rules permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Federal Rule 26(b)(1). Relevant information need not be admissible at trial. Id. The wiretap materials now in defendants' possession include recordings of their communications made during a covert insider trading investigation conducted by the USAO, and are thus plainly relevant to the Commission's allegations of the defendants tipping and trading on material nonpublic information.

---

[1] The Commission also has requested the wiretap materials from the USAO and understands that the USAO may separately seek a court order authorizing it to disclose the materials to the Commission pursuant to Title III. The USAO has informed the Commission and the Court that it has no objection to the defendants disclosing the information pursuant to civil discovery in this matter.

The Honorable Jed S. Rakoff, USDJ
1/20/2010
Page 2

Nothing in Title III prevents defendants from turning over the wiretap information pursuant to a request under Federal Rules 26 and 34. Title III provides a statutory framework through which the government may lawfully apply for and execute covert wiretaps in connection with investigations of certain criminal activity. See §§ 2516, 2518; In re Newsday, Inc., 895 F.2d 74, 76 (2d Cir. 1990). Title III also sets forth the circumstances under which the government may use and disclose that information. See § 2517. One method for disclosing wiretap information -- but not the only method -- is through "testimony under oath or affirmation in any proceeding held under the authority of the United States[.]" § 2517(3); Newsday, 895 F.2d at 76.

While Title III sets limits on how the government may use or disclose the contents of lawfully intercepted communications, the statute contains only one limitation on a private citizen's disclosure of such communications. Section 2511(1)(e) of Title III prohibits disclosure of the contents of wiretap information obtained in connection with a criminal investigation only where it is disclosed "with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation." The express inclusion of this provision suggests that non-obstructive disclosures by the recipients of such wiretap material are not prohibited. Title III contains no other prohibitions on a private citizen's ability to disclose lawfully intercepted Title III material.

A settled principle of statutory interpretation is that courts must follow the plain text of a statute. AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 445 (2d Cir. 2009). Courts should not read into a statute limitations that do not otherwise exist. See U.S. v. Myers, 635 F.2d 932, 939-40 (2d Cir. 1980) ("the question is whether we should read into the statute a limitation . . . in the absence of explicit authorization, or apply the statute without such limitation until such time as Congress explicitly places it there. We conclude that the latter approach is more consonant with a court's traditional role in statutory interpretation."). Since Title III does not prohibit disclosure by a private citizen of lawfully obtained wiretap information pursuant to a legitimate civil discovery demand, the statute should not be interpreted to bar defendants from turning over the wiretap information pursuant to the Commission's civil discovery requests. See Philadelphia Housing Auth. v. American Radiator & Stan. Sanitary Corp., 291 F. Supp. 247, 248-50 (E.D. Pa. 1968) (requiring defendants to turn over wiretap information to plaintiffs in civil litigation; in doing so, defendants could not be found to violate Title III because they were acting pursuant to a court order).

Defendants contend that Title III proscribes the disclosure of intercepted wire communications except as specifically permitted by the statute. Defendants are incorrect. The Second Circuit confronted – and rejected – a similar argument in Newsday. See 895 F.2d at 77-78. There, the newspaper Newsday sought access to a sealed search warrant application containing information obtained from a wiretap. The district court released a redacted copy of the warrant materials over the objection of the subject of the wiretap, who then appealed. On appeal, the subject asserted, as defendants do here, that "disclosure" by testimony in court pursuant to § 2517(3) is the exclusive means by which intercepted communications may be released to the public[.]" Id. at 77 [emphasis added]. The Second Circuit disagreed with this proposition: "We agree that Title III generates no right of [public] access, but it is a non-sequitur

The Honorable Jed S. Rakoff, USDJ
1/20/2010
Page 3

to conclude the obverse: that Congress intended in § 2517, which relates solely to use in law-enforcement activities and judicial proceedings, to forbid public access by any other means on any other occasion." Id. The Second Circuit concluded that "nowhere does Title III state rules regarding disclosure of intercepted communications to the public incident to, or after, their use under § 2517." Id. at 78.

The Second Circuit's logic in Newsday is equally applicable to this case. Defendants urge the Court to read into Title III's statutory framework a limitation on what defendants can do with the wiretap information they obtained from the government pursuant to Title III. But Title III does not govern the disclosure of intercepted communications to defendants' adversary in a pending civil proceeding. Defendants invite this Court to interpret Title III in such a way as to override their discovery obligations under the Federal Rules. The Court should not accept defendants' invitation. The wiretap information is relevant both to the Commission's allegations and to the search for truth in this case.

None of the cases on which defendants rely requires a different result because none of them involves circumstances analogous to those presented here. Cases such as National Broadcasting Co. v. U.S. Dep't of Justice, 735 F.2d 51 (2d Cir. 1984) ("NBC") and In re Motion to Unseal Electronic Surveillance Evidence, 990 F.2d 1015 (8th Cir. 1993) ("Motion to Unseal") are distinguishable because they do not involve situations where one party in civil litigation has wiretap information that its adversary does not have. For example, in NBC, plaintiff NBC sought access from the government to wiretap information that NBC deemed relevant to its defense in a pending libel action. The plaintiff in the libel action against NBC did not already have the wiretap information. See 735 F.2d at 52-53. Similarly, in Motion to Unseal, the party seeking the wiretap information from the government was a plaintiff in a civil RICO action. The wiretap information that plaintiff sought remained under seal; the defendant in the RICO action did not have access to it either. See 990 F.2d at 1016; see also County of Oakland v. City of Detroit, 610 F. Supp. 364, 365 (E.D. Mich. 1984) (plaintiffs in private civil RICO action sought wiretap materials from the government, not from the defendants in the RICO action); Dowd v. Calabrese, 101 F.R.D. 427, 434-35 (D.D.C. 1984) (denying libel action defendants access to sealed or otherwise non-public wiretap information; no indication that plaintiff had access to the wiretap information, the relevance of which was "quite tenuous").[2]

Here, defendants have the wiretap information; the Commission does not. It would be highly inequitable and inconsistent with the Federal Rules to permit this case to be tried while defendants possess such an informational advantage. They will be able to use the wiretap materials in fashioning their defense, preparing their witnesses, and cross-examining plaintiff's witnesses without plaintiff having the benefit of the same information. Moreover, this is not a case, such as that presented in In re New York Times Company to Unseal Wiretap & Search

---

[2] Defendants' reliance on Motion to Unseal and United States v. Dorfman, 690 F.2d 1230 (7th Cir. 1982), for the proposition that Title III prohibits all disclosures not specifically authorized is misplaced. Those cases set forth that broad, conclusory claim without citation to any specific statutory language or legislative history to support it, and the Title III statute itself contains no such blanket prohibition. Moreover, the Second Circuit rejected this proposition in Newsday.

The Honorable Jed S. Rakoff, USDJ
1/20/2010
Page 4

Warrant Materials, 577 F.3d 401 (2d Cir. 2009), where the party seeking access to the wiretap information is the press. The Commission is the agency charged with enforcing the federal securities laws and it seeks to obtain evidence that is highly relevant to this enforcement action, the purpose of which is to serve the public interest and fulfill the Commission's statutory responsibilities.

Defendants also contend that even if Title III permitted them to produce *lawfully* obtained wiretap information, Title III criminally proscribes the disclosure of *unlawfully* obtained wiretap information. Thus, they say that the legality of the wiretaps must be determined before defendants can disclose the wiretap information. This argument has been asserted and rejected before. See McQuade v. Michael Gassner Mech. & Elec. Contractors, Inc., 587 F. Supp. 1183, 1190 (D. Conn. 1984) ("Until both sides have had an opportunity through discovery to investigate the lawfulness *vel non* of the interceptions and recording, it is not appropriate to address questions regarding admissibility at trial of the tapes or prohibition of their disclosure. The possible inadmissibility of the tape recordings at trial is not an adequate reason to foreclose discovery of them."); cf. Philadelphia Housing Auth., 291 F. Supp. at 250 (defense counsel cannot be held to violate Title III if they produce them pursuant to court order). Defendants' argument conveniently subverts the point of civil discovery, which is to permit each side to see all relevant evidence in its adversary's control prior to trial. Whether the government lawfully obtained the wiretap information is a question that goes to the admissibility of that evidence, not to its relevance. That issue need not be decided now. Any privacy concerns defendants have are already addressed through the use of the protective order that the Court has entered.

Two additional factors warrant disclosure of defendants' wiretap information to the Commission. First, the Commission has reason to believe that the defendants have in fact already disclosed certain of the wiretap materials to co-defendants and non-parties.[3] Such disclosure belies defendants' present contention that they believe Title III proscribes the disclosure of wiretap materials except as specifically permitted. Title III does not expressly authorize defendants to use wiretap materials to prepare witnesses or to disclose wiretap materials pursuant to a joint defense agreement. Yet, this is apparently what defendants have done, and that fact further demonstrates that defendants are refusing to produce the wiretap materials to the Commission -- not because they believe Title III forbids them from doing so -- but because they want to maintain a tactical advantage against the Commission in this litigation. The Federal Rules do not countenance such an approach.

Second, defendants concede that section 2517(3) of Title III permits disclosure of the contents of wiretaps through a witness at trial. They apparently agree with the Commission that it may call one or more witnesses at trial to testify about the contents of the wiretap materials. As at least one court has noted, it would be a "strange limitation" indeed for Title III to permit disclosure through a witness at trial but not during pretrial discovery. In re High Fructose Corn

---

[3] The Commission requested that Defendant Rajaratnam identify any individuals or entities to which he has disclosed wiretap materials. Defendant Rajaratnam refused to answer on the basis of "attorney-client, common interest, and joint defense privileges, and the attorney work product doctrine."

Syrup Antitrust Litig., 216 F.3d 621, 624 (7th Cir. 2000) ("Another issue on which authority is scanty is whether section 2517(3) is limited to trials and so excludes discovery, which would be a particularly strange limitation ...."). In fact, there is no such limitation; nothing in Title III bars defendants from turning over the wiretap information in the course of discovery, and this Court should not read any such limitation into the statute.

Defendants' refusal to produce the wiretap materials in response to the Commission's discovery requests is untenable, given the overarching purpose of the Federal Rules. As the Advisory Committee Notes to Rule 26 state:

> The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947). Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.

Advisory Committee Notes, 1983 Amendments. Defendant Rajaratnam has represented that the wiretap materials include thousands of intercepted communications and, on that basis, he has sought to postpone his scheduled deposition. Yet, he also admits he has had wiretap materials since at least December 2009. Thus, certain defendants have had the ability to use the wiretap materials to prepare for trial, while plaintiff has had absolutely no access.[4] The Federal Rules were designed to prevent such an inequitable and unbalanced posture.

Accordingly, the Commission respectfully requests that the Court order the defendants to comply with plaintiff's discovery requests and immediately produce to the Commission all wiretap materials in their possession, custody or control.

Respectfully submitted,

Valerie A. Szczepanik
Senior Trial Counsel

cc: All defense counsel (by email)
Jonathan Streeter, AUSA (by email)

---

[4] Defendant Rajaratnam has insinuated that the Commission has had access to the wiretap materials. The Commission has not had access, apart from certain information from the wiretap materials that was made public in the various charging documents relating to the parallel criminal proceedings.