# AKIN GUMP
# STRAUSS HAUER & FELD LLP
━━━━━━━━━━ Attorneys at Law

TERENCE J. LYNAM
2028874045/fax: 2028874288
tlynam@akingump.com

January 22, 2010

VIA FACSIMILE

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10022

    Re:    SEC v. Galleon Management, LP, et al., 09 Civ. 881 (JSR)

Dear Judge Rakoff:

    Defendant Raj Rajaratnam respectfully opposes the SEC's motion to compel the production of wiretap evidence. The SEC seeks to obtain through routine civil discovery thousands of secretly recorded telephone conversations that are currently under seal, pursuant to 18 U.S.C. § 2518(8)(a), in a criminal proceeding over which Judge Holwell presides, without first asking Judge Holwell. Most of those private conversations have nothing to do with this case, and they involve scores of individuals, many of whom are not parties to this case or this disclosure proceeding. The motion should be denied because the plain language of Title III, 18 U.S.C. § 2510 *et seq.*, and controlling precedent prohibit forcing Mr. Rajaratnam to disclose the materials and thereby to compound the violation of his privacy rights that the unlawfully obtained wiretaps have already inflicted.

    On October 16, 2009, the United States Attorney's Office ("USAO") and SEC filed simultaneous criminal and civil complaints against Mr. Rajaratnam. On December 23, 2009, the USAO began producing the wiretap evidence to Mr. Rajaratnam pursuant to Rule 16 of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the Constitution. Mr. Rajaratnam has received those materials exclusively in his capacity as a criminal defendant. Although the wiretap materials are subject to a statutorily mandated seal in the criminal proceeding, the SEC now seeks to compel Mr. Rajaratnam to do what the USAO is unwilling, or unable, to do – disclose those wiretaps for use in multi-party civil litigation, prior to any adjudication of his motion to suppress, and prior to their lawful use in a proceeding under 18 U.S.C. § 2517. Their arguments to compel disclosure are wrong and contrary to what the United States argued to the Second Circuit just last year. *See In re Application of N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401 (2d Cir. 2009).

    1.    Title III is a "comprehensive scheme for the regulation of wiretapping" prescribing which law enforcement agencies may obtain wiretaps and for which offenses and setting forth elaborate rules for authorizing and conducting wire surveillance, reporting results, sealing, and the use and disclosure of wiretap evidence. *Gelbard v. United States*, 408 U.S. 41, 46 (1972); *see also In re Application of Newsday, Inc.*, 895 F.2d 74, 76 (2d Cir. 1990). This

comprehensive scheme reflects Congress's careful balancing of its "overriding concern" for the protection of individual privacy, *Gelbard*, 408 U.S. at 48, with the need for "effective control of crime," *United States v. United States Dist. Ct. for E.D. Mich.*, 407 U.S. 297, 302 (1972). Because Congress intended to create a comprehensive scheme, "Title III prohibits all disclosures not authorized therein." *Smith v. Lipton*, 990 F.2d 1015, 1018 (8th Cir. 1993) (en banc); *see also United States v. Marion*, 535 F.2d 697, 700 (2d Cir. 1976) (Title III "prohibits, in all but a few instances, the disclosure of wire or oral communications"); *In re Grand Jury*, 111 F.3d 1066, 1078 (3d Cir. 1997) ("The statutory structure makes it clear that any interceptions of communications and invasions of individual privacy are prohibited unless expressly authorized in Title III."). These strict limitations on disclosure create "a strong presumption *against* disclosure of the fruits of wiretap applications," *N.Y. Times*, 577 F.3d at 406, and generally confine the use of wiretap evidence to "enforcement of the criminal law," *In re Application of Nat'l Broad. Co.*, 735 F.2d 51, 54 (2d Cir. 1984). The presumption against disclosure protects both the privacy interests of persons whose private conversations are tapped and the fair trial rights of criminal defendants. *See United States v. Gerena*, 869 F.2d 82, 85-86 (2d Cir. 1989).

2. Title III's terms are clear. Wiretap recordings are sealed under the direction of the Court. 18 U.S.C. § 2518(8)(a). The use and disclosure of wiretaps is governed by Section 2517, which provides that "person[s]" other than "investigative or law enforcement officer[s]" can only disclose the contents of intercepted wire communications "while giving testimony." 18 U.S.C. § 2517(3).[1] Nothing in the statute permits routine disclosure in civil discovery, and "the decision as to what information should remain sealed or be disclosed" cannot be made by the government unilaterally. *Gerena*, 869 F.2d at 85.[2]

The SEC argues that Title III takes a backseat to the routine rules of civil discovery. That is wrong. Title III reflects Congress's judgment that wiretap materials are prohibited from disclosure except pursuant to the statute's terms, which do not authorize disclosure of sealed wiretap evidence in civil discovery. Indeed, the Second Circuit held in *NBC* – at the government's behest – that wiretaps could not be turned over to a civil litigant for use in a civil case because "turning Title III into a general civil discovery mechanism would simply ignore the privacy rights of those whose conversations are overheard," 735 F.2d at 54; *see also Smith*, 990 F.2d at 1020; *County of Oakland v. City of Detroit*, 610 F. Supp. 364, 371 (E.D. Mich. 1984); *Dowd v. Calabrese*, 101 F.R.D. 427, 435 (D.D.C. 1984). Tellingly, the plain text of Title III, and the statutorily protected privacy interests of Mr. Rajaratnam and the others whose conversations comprise the voluminous recordings, are simply absent from the government's ten pages of argument.

---

[1] The USAO agrees that Mr. Rajaratnam can use the materials to prepare his criminal defense, and Title III must be construed to operate constitutionally. *NBC*, 735 F.2d at 54.

[2] The SEC relies on dictum in *In re High Fructose Corn Syrup Lit.*, 216 F.3d 621 (7th Cir. 2000), but that case concerned consensual recordings to which Title III does not apply, *id.* at 624.

Moreover, "a specific statute" like Title III "controls over a general provision." *In re Stoltz*, 315 F.3d 80, 93 (2d Cir. 2002) (quoting *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981)). As the Second Circuit reminded just five months ago, on questions of disclosure, Title III is the "statute on point," *N.Y. Times*, 577 F.3d at 406, and it places "strict limits on wiretapping and how it could be used," *NBC*, 735 F.2d at 53. Accordingly, Mr. Rajaratnam fully agrees with the United States' position in *N.Y. Times* that "'[w]hen addressing the disclosure of the contents of a wiretap,' the question is thus 'whether Title III specifically *authorizes* such disclosure, not whether Title III specifically prohibits the disclosure." U.S. App. Br., *N.Y. Times, supra*, at 16-17 (quoting *Smith*, 990 F.2d at 1018). The Second Circuit and other courts of appeals agree too: "Aside from these permitted uses, Title III requires sealing of intercepted communications." *Newsday*, 895 F.2d at 77; *see also Smith*, 990 F.2d at 1020; *United States v. Dorfman*, 690 F.2d 1230, 1232 (7th Cir. 1982); *Futz v. Gilliam*, 942 F.2d 396, 401-402 (6th Cir. 1991); *United Kingdom v. United States*, 238 F.3d 1312, 1323 (11th Cir. 2001); *United States v. Cianfrani*, 573 F.2d 835, 855-856 & n. 7 (3d Cir. 1978).

3.   Rather than come to grips with precedent and the United States' consistent litigating position for a quarter century (from *NBC* to *NY Times*) *opposing* the disclosure of wiretap materials outside of Title III's strict terms, the SEC and USAO argue that Title III and precedent can be cast aside because it would be "inequitable" and "absurd" for Mr. Rajaratnam to possess material that the SEC does not—a situation due entirely to the SEC's and USAO's decision to file simultaneous complaints. But this is nothing more than a disagreement with the balance struck by Title III's disclosure provisions. *See NBC, supra; In re Grand Jury*, 111 F.3d 1066, 1078-79 (3d Cir. 1997) ("[W]hen enacting Title III, Congress performed all of the balancing necessary of the public interest in law enforcement against the privacy interests of citizens."). Moreover, Mr. Rajaratnam does not have the materials in his capacity as a private citizen or litigant. He has them only because he is a defendant in a criminal prosecution. In its letter, the USAO recognizes that he has the right to use the materials to defend himself in the criminal case. But Mr. Rajaratnam's constitutional right to defend himself in that case does not create an independent discovery right by the SEC in its civil action. Mr. Rajaratnam, in fact, expects the wiretap material to be suppressed in the criminal case and thus unavailable as a matter of law in both cases. Surely the price of exercising his constitutional right to defend himself is not that he forfeits his own privacy rights under the Constitution and Title III. Moreover, even if he were to attempt to use the material, the proper way to deal with that would be a motion to preclude or disclose tailored to the specific wiretap evidence offered; it would not be the wholesale release of thousands of recordings that the SEC seeks here.

In any event, this is a problem entirely of the SEC's own making because it chose to bring its civil action before the criminal proceeding, before the motion to suppress has been adjudicated, and before the wiretaps have been used "incident to" publicly open proceedings, "or after[] their use under § 2517." *Newsday*, 895 F.2d at 78. Moreover, it is not unusual for a criminal defendant to possess material, by virtue of his Fifth and Sixth Amendment rights – whether wiretaps or grand jury material – that civil litigants may not be able to obtain. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979) (possible injustice and necessity standard for grand jury materials). And it must be remembered that Title III specifically denies

the SEC any authority to obtain or use wiretaps as part of its civil enforcement efforts because the SEC is not a law enforcement agency "empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter," 18 U.S.C. §§ 2510(7), 2516 (omitting Title 15 offenses), which is undoubtedly why the USAO has not simply released the wiretaps to the SEC. If anything is inequitable, then, it is the USAO and SEC double-teaming to end run Title III's limitations and to give the SEC the very wiretap tools that Title III denies it. Indeed, if all it takes is a civil discovery request to unloose wiretap materials, then courts are likely to see a feeding frenzy of parasitic civil litigation against criminal defendants by non-Title III federal agencies, state agencies, private parties, and the media seeking what Title III has for decades denied.[3]

4. What is even more inequitable is the federal government's effort to force Mr. Rajaratnam – the very "aggrieved person" whose privacy Title III so assiduously protects, 18 U.S.C. § 2510(11) – to become the instrument of his own further privacy intrusion. If Title III actually permitted disclosure via the governmental self help of filing a civil action, then the USAO could have disclosed these materials two months ago, or the SEC could have moved Judge Holwell to lift the seal a month ago rather than instigating a discovery dispute in this Court.[4] But if Title III prohibits the government from disclosing it, then it most assuredly cannot compel the private person whose calls were tapped to compound the intrusion on his privacy, particularly when, as here, the defendant's objections to the legality of the wiretaps have not yet been heard or adjudicated. Title III expressly proscribes the disclosure of intercepted wire communications that the disclosing person knows or has reason to know were obtained in violation of the statute. 18 U.S.C. § 2511(1)(c). Mr. Rajaratnam has multiple reasons to know that wiretap evidence was obtained illegally based on applications to the Court that were materially false and legally insufficient in a number of respects.

Contrary to the SEC's argument, this is not a question of discoverability versus admissibility. The plain terms of Title III make the person's knowledge of the wiretaps' illegality *vel non* an element of the disclosure authorization. As the government itself has explained, "[t]he statutory prohibitions on disclosure and use . . . together reflect a single congressional aim to bar all exploitation of illegally intercepted communications when the recipient knows or has reason to know of the illegal source." U.S. App. Br. at 23-24, *Bartnicki v. Vopper*, 532 U.S. 514 (2001). At a minimum, the profound privacy interests at stake require an

---

[3] The USAO argues that *United States v. Nixon*, 418 U.S. 683 (1974) entitles the SEC to "every man's evidence" in civil discovery. Unfortunately for the USAO, the Solicitor General and the U.S. Supreme Court disagree. *See Cheney v. U.S. District Court*, 542 U.S. 367, 383 (2004) (noting the "fundamental difference" under *Nixon* between civil and criminal discovery).

[4] Even if the SEC and USAO do seek relief from Judge Holwell, as they have indicated they might, Mr. Rajaratnam would make the same arguments before Judge Holwell as he makes here. Title III precludes the production of the wiretap evidence for use in the SEC civil action, regardless of which Judge is presented with the request.

The Honorable Jed S. Rakoff
January 22, 2010
Page 5

adjudication of the wiretaps' lawfulness before they become fodder for a civil dispute involving 19 different parties. *See, e.g., Cianfrani*, 573 F.2d at 855-857 (no disclosure until legality is determined); *United States v. Vancier*, 466 F. Supp. 910, 911 (S.D.N.Y. 1979). That is because, as the Supreme Court has held (again, at the United States' behest), "the disclosure of the contents of a private conversation can be an even greater intrusion on privacy than the interception itself." *Bartnicki*, 532 U.S. at 533.[5]

     5.    While the SEC and USAO rely heavily on the Second Circuit's decision in *Newsday*, that case proves Mr. Rajaratnam's point because it permitted disclosure only after the wiretaps had been used in a search warrant affidavit, which is a "public document." Critically, even then the court only permitted disclosure of the wiretap material in the application itself that had been publicly disclosed, not every taped conversation collected by law enforcement but never used in the criminal proceeding. 895 F.2d at 75. The Second Circuit in *NY Times* distinguished *Newsday* on precisely that ground, 577 F.3d at 407 n.3, and did so at the urging of the United States, which argued that Title III prohibits disclosures not specifically permitted. *See* U.S. App. Br. *N.Y. Times, supra*, at 17-18. *Newsday* cannot mean one thing when the government opposed disclosure and another thing when the government wants disclosure.

     6.    Finally, with respect to the request for the government's sealed Title III applications and the Court's sealed orders granting those applications, disclosure may be ordered only upon a showing of "good cause." 18 U.S.C. § 2518(8)(b). Here, the SEC cannot make the required showing, because it is not an "aggrieved person" entitled to seek suppression of the materials under Title III, and the Second Circuit has held that no "lesser showing" is sufficient to establish good cause for the disclosure of sealed Title III applications and orders. *See N.Y. Times* 577 F.3d at 406-411. If the court-filed applications cannot be released, then the wiretap themselves, which are at the core of Title III's privacy protection, must receive at least equivalent protection.

Respectfully submitted,

*/s/ Terence J. Lynam*

Terence J. Lynam (*pro hac vice*)
John M. Dowd (*pro hac vice*)
William E. White (*pro hac vice*)

*Attorneys for Defendant Raj Rajaratnam*

---

     [5] *McQuade v. Michael Gassner Mech.*, 587 F. Supp. 1183 (D. Conn. 1984), is of no help to the SEC, because it involved a civil claim under Title III itself, where the legality of the wire surveillance was the ultimate issue in the case, a distinguishing feature stressed by that court itself. *Id.* at 1189 n.9.

The Honorable Jed S. Rakoff
January 22, 2010
Page 6

cc:  Assistant United States Attorney Jonathan Streeter
     Assistant United States Attorney Reed Brodsky
     Special Assistant United States Attorney Andrew Michaelson
     Valerie A. Szcczepanik, SEC Senior Trial Counsel