# ANDERSON KILL & OLICK, P.C.

Attorneys and Counsellors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Cynthia M. Monaco, Esq.
Cmonaco@andersonkill.com
(212) 278-1034

January 22, 2010

**Via Facsimile**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Securities and Exchange Commission v. Galleon Management, LP, et al.* 09 Civ. 8811 (JSR)

Dear Judge Rakoff:

On behalf of Defendant Zvi Goffer, we respectfully submit this letter response to the motion of the Securities and Exchange Commission (the "SEC") to compel discovery of "wiretap materials" from Defendants Rajaratnam and Chiesi dated January 20, 2010. Mr. Goffer joins in and adopts the arguments raised by his co-defendants against production of "wiretap materials." Mr. Goffer writes to set forth certain facts distinguishing his case from that of his co-defendants.[1]

## RELEVANT BACKGROUND

a. <u>The Relevant Allegations and Stocks</u>

The SEC's Amended Complaint alleges Mr. Goffer unlawfully traded upon material non-public information with respect to two stocks (1) Hilton, with trading taking place in July 2007; and (2) Kronos, with trading taking place in March 2007. See Amended Complaint at ¶¶ 64 and 87.[2] The SEC alleges that Mr. Goffer was a downstream tippee of information misappropriated from Moody's (Hilton) and "Kronos

---

[1] Counsel for the SEC, Valerie Szczepanik, informed Defendants that the SEC would seek a motion to compel disclosure of wiretap materials from Defendants Chiesi and Rajaratnam in an e-mail dated January 13, 2010. The following day, counsel for Mr. Goffer received Plaintiff's Second Request for Production of Documents to Defendants which included a request that Mr. Goffer produce all "wiretap materials." In order to conserve the time of co-defendants and the Court, Mr. Goffer addresses certain factual distinctions relevant to his case in anticipation of a Motion to Compel directed at him.

[2] The SEC has sought leave to file a Second Amended Complaint. The proposed Second Amended Complaint contains no new charges or accusations against Mr. Goffer.

New York ■ Greenwich ■ Newark ■ Philadelphia ■ Ventura ■ Washington, D.C.

NYDOCS1-938261.1

**Anderson Kill & Olick, P.C.**

The Honorable Jed S. Rakoff
January 22, 2010
Page 2

Source" (Kronos) by Defendant Deep Shah, and passed in a chain through Defendant Roomy Khan, through Tipper X, through Defendant Gautham Shankar and finally to associates at Schottenfeld which included Mr. Goffer. (See Amended Complaint at ¶¶ 54-64 and 80-87.) Mr. Goffer is separately charged in United States v. Goffer, et al., 10-Cr.-056 (RJS) with insider trading-related charges, including trading in Hilton, Kronos, Axcan and 3COM, with the latter two stocks trading in and around March 2007 and August 2007 respectively. In a separate SEC complaint, SEC v. Cutillo, et al., 09-Civ.-9208 (LAK), Mr. Goffer is charged with insider trading in Axcan, 3COM and other stocks.

In all three cases only trades in Kronos and Hilton are alleged to have been passed through the Shah, Khan, Tipper X and Shankar chain to Mr. Goffer.

    b.    The Relevant Wiretap Information

        1.    The Rajaratnam Wires

On January 13, 2010, Mr. Goffer received an "Inventory Notice" of AUSA Reed Brodsky which for the first time notified Mr. Goffer that he had been captured on certain electronic intercepts of telephone conversations on Mr. Rajaratnam's telephone. Despite requests to both counsel for Mr. Rajaratnam and AUSA Brodsky, Mr. Goffer has not been provided either the content of those wire communications or any line sheets or transcripts summarizing those conversations. Because Mr. Goffer is without access to his own communications captured in connection with wiretap of Mr. Rajaratnam's mobile telephone, he respectfully requests that the Court order those communications and any applications and court orders authorizing their interception produced to him in advance of their production to the SEC or private parties in this action in order to permit Mr. Goffer to review the tapes for possible objections to their production and/or suppression. See generally, 18 U.S.C. 2518 (9) and (10).

        2.    The Drimal, Goldfarb, and Goffer Wires

According to a criminal complaint filed in the Southern District of New York, United States v. Goffer et al., 09-Mag.-2438, Mr. Goffer and others were captured on certain court-authorized wiretaps on mobile telephones of Craig Drimal on November 16, 2007 through December 15, 2007; December 17, 2007 through January 15, 2008; Zvi Goffer on December 11, 2007 through January 9, 2008; January 10, 2008 through February 8, 2008; and February 11, 2008 through April 9, 2008; and April 10, 2008 through May 9, 2008; and Jason Goldfarb on February 7, 2008 through March 6, 2008.

To afford certain co-defendants an opportunity to communicate with the government, Mr. Goffer and his co-defendants agreed to government requests for two extensions of time in which to bring an indictment in this case. In connection with those extensions, the government produced to the defendants what it stated were wiretap

**Anderson Kill & Olick, P.C.**

The Honorable Jed S. Rakoff
January 22, 2010
Page 3

communications. According to the line sheets provided by the government, the communications encompass over 10,700 monitored telephone calls on Zvi Goffer's mobile telephone, 1,700 on Jason Goldfarb's telephone, and 3,800 on Craig Drimal's mobile telephone. The bulk of these recordings on Mr. Goffer's mobile telephone were produced only this month. The line sheet summaries were provided subject to Mr. Goffer's agreement to a stipulation prohibiting certain uses of the documents and prohibiting sharing of them with parties to the SEC action unless those parties also sign the stipulation with the United States Attorney's Office. No wiretap applications or any court orders authorizing the interception of communications over any of the three mobile telephones over the seven month period have been produced to Mr. Goffer.

## ARGUMENT

As noted above, Mr. Goffer joins in the applicable arguments of his co-defendants seeking to preclude discovery by the SEC of "wiretap materials" as that term is defined in its request.[3] Added to these arguments, Mr. Goffer notes the following:

First, because all of the recordings take place four months or more after the trades by Mr. Goffer at issue in the SEC's complaint were concluded, the vast majority of these calls are of no arguable relevance to the specific tippee stream at issue in this case. Mr. Goffer and his counsel have not had an adequate opportunity to review the wiretap recordings on the Goffer, Drimal, and Goldfarb mobile telephones which comprise many thousands of telephone calls. Reviewing all of these calls for relevance and privilege on a shortened time frame is unduly burdensome and costly. Nor is a wholesale production under a protective order an easy solution to privacy and privilege issues. For example, a review of the telephone calls over the Drimal mobile telephone produced in December by the government revealed a number of personal telephone calls between Drimal and his spouse which were not minimized by monitoring agents. A similar review of Mr. Goffer's mobile telephone for such calls will take a substantial amount of time to complete.

Second, the United States argues that defendants can not contend that they interpret Title III as preventing production when, in fact, they have widely shared wiretap materials with witnesses and co-defendants. In fact, no such contention has

---

[3]   Unlike certain of his co-defendants, Mr. Goffer has invoked his Fifth Amendment right not to be a witness against himself including his rights under the act of production doctrine. The SEC's request for documents imprecisely seeks Mr. Goffer's identification and thus "authentication" of materials as the product of an electronic interception, thereby requiring Mr. Goffer's declination to produce the items. See generally, United States v. Doe, 465 U.S. 605 (1984) (discussing authentication as an act of production immunity issue). Although the SEC has not conferred with counsel for Mr. Goffer on its request for the production of wiretap materials, Mr. Goffer will agree to interpret the request as seeking items *the United States* has identified as "wiretap materials."

**Anderson Kill & Olick, P.C.**

The Honorable Jed S. Rakoff
January 22, 2010
Page 4

been raised by the SEC or the United States against Mr. Goffer, nor would one be accurate.

## CONCLUSION

Based on the foregoing, Mr. Goffer respectfully requests that the court deny the SEC's Motion to Compel.

Respectfully submitted,

Cynthia M. Monaco

CMM
cc:   All Counsel (via email)
       Jonathan Streeter, AUSA (via email)

NYDOCS1-938261.1