# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

ALAN R. KAUFMAN
DIRECT LINE (212) 808-5195
EMAIL akaufman@kelleydrye.com

January 27, 2010

**VIA FACSIMILE (212) 805-7935**

The Honorable Jed S. Rakoff
United States District Judge
United States Courthouse
New York, New York 10007

      Re:   *SEC v. Galleon Management, L.P. et al.*, 09 Civ. 8811 (JSR)

Dear Judge Rakoff:

On behalf of Danielle Chiesi, we write to respond to arguments advanced by the SEC and United States Attorney's Office ("USAO") during the hearing on January 25 concerning the SEC's motion to compel production of Title III Materials. We will endeavor to not repeat arguments made in our January 22 letter brief, but rather to address issues which arose during the hearing.

## A. USAO Disclosure to the SEC – The Four Cases

Going into the hearing, the issue was whether the SEC could obtain the Title III Materials from the defendants Rajaratnam and Chiesi pursuant to the SEC's motion to compel production under the Federal Rules of Civil Procedure. The USAO was invited by the Court to state its position, and through AUSA John Streeter it opined that the SEC should be able to obtain the Materials from the defendants in order to level the playing field with the defendants. At the hearing, Mr. Streeter also advised that the USAO could make disclosure to the SEC pursuant to Title 18, USC § 2517(2)[1], and cited to four cases as authority. Defendants were invited to respond to those case citations.

---

[1] At various times during this case, Mr. Streeter has represented that the USAO was going to apply to Judge Holwell for permission to make such disclosure. Apparently, he is not going to do so. Defendants believe that Judge Holwell is the appropriate arbiter of this issue, and since the USAO is not about to initiate the application there, the defendants intend to move before Judge Holwell, seeking a protective order to preclude any such disclosure, in order to prevent any possible future claim that we waived our objection to disclosure to the SEC.

NY01/KRNFJ/1397453.1

**KELLEY DRYE & WARREN LLP**

The Honorable Jed S. Rakoff
Page Two

The four cases are inapposite. *Fleming v. United States*, 547 F.2d 872 (5th Cir. 1977) held that intercepted communications which had been disclosed to the IRS were admissible in a civil litigation between the IRS and the estate of a deceased taxpayer because the taxpayer's criminal case was over and the contents of the Title III intercepts had become public:

> The rationale for such a limitation on the dissemination of lawfully seized evidence would be the privacy interest which a person retains in his or her communications even after they have been intercepted by a narrow category of government officials. But whatever the strength of that privacy interest in other circumstances, when the intercepted communications are already part of the public record of a criminal prosecution the privacy interest is weak and does not justify excluding the evidence.

*Id.* at 874. The holding was exactly the same in *Griffin v. United States*, 588 F.2d 521 (5th Cir. 1979) and *Spatafore v. United States*, 752 F.2d 415 (9th Cir. 1985), each of which relied on *Fleming*.

There has been no public disclosure of the Title III Materials in this case. Public disclosure is what persuaded the Second Circuit in *In re Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990) to permit access to a search warrant application (a public record) containing wiretap information, and the lack of any public disclosure — thus elevating to paramount significance the privacy interests of the affected individuals — was a compelling factor in the Second Circuit's decisions in *National Broadcasting Co. v. Department of Justice*, 735 F.2d 51 (2d Cir. 1984) and *In the Matter of the Application of the New York Times Company to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401 (2d Cir. 2009) denying access to or disclosure of Title III materials.

The fourth case cited by Mr. Streeter is just as unhelpful to his position. In *Resha v. United States*, 767 F.2d 285 (6th Cir. 1985), the court did not decide the issue of whether FBI disclosure to the IRS was proper. It avoided the issue by saying "we do not believe it is necessary in the present case to determine whether disclosure of the evidence to the revenue agent violated §2517 since we conclude that the Act does not authorize suppression of the evidence in this action, regardless of whether the disclosure violated §2517." *Id.* at 287-88. This is hardly a ringing endorsement of the government's position here. Moreover, the only judge in *Resha* to actually decide the disclosure issue — the district judge — ruled that the disclosure by the FBI to the IRS was unlawful.

B. USAO Disclosure to the SEC - Section 2517(2)

At the hearing, Mr. Streeter conceded that disclosure pursuant to § 2517(1) would not be proper — members of the SEC are not "investigative or law enforcement officer(s)" as defined

NY01/KENEJ/1397453.1

**KELLEY DRYE & WARREN LLP**

The Honorable Jed S. Rakoff
Page Three

by Title III.[2] This much is clear, since § 2517(1) allows an "investigative or law enforcement officer" to disclose the contents of "any wire, oral, or electronic communication" only to "another investigative or law enforcement officer to the extent that such disclosure is appropriate to the official duties of the officer making or receiving the disclosure." Since SEC personnel are not "investigative or law enforcement officer[s]" under 18 U.S.C. § 2510(7), no disclosure may be made to them under § 2517(1). However, Mr. Streeter contended that disclosure can be made pursuant to §2517(2) which permits a "law enforcement officer" (an AUSA) to "use [Title III materials] to the extent such use is appropriate to the proper performance of his official duties." (emphasis added). As more fully stated below, Mr. Streeter's argument that "use" permits him to make "disclosure" to the SEC would completely eviscerate §2517(1), and render it utterly superfluous. Moreover, the "use" envisioned in §2517(2) must be in furtherance of the AUSA's **law enforcement functions**, not just a desire to satisfy the SEC because "they are our partner in enforcing the securities laws, and we want them to be able to do that effectively." (1/25/10 Tr. at 15.)[3]

Investigative or law enforcement officers such as FBI agents or members of the U.S. Attorney's Office may use Title III evidence only insofar as it is appropriate in the exercise of their duties. When Congress enacted Title III, it envisioned that law enforcement officers could use "the contents of intercepted communications, for example, to establish probable cause for arrest . . . , to establish probable cause for a search . . . , or to develop witnesses." S. Rep No. 1097, at 70 (1968). Indeed, the Senate Report emphasized that "[o]nly use that is appropriate to the proper performance of official duties may be made." *Id.*

Case law confirms that "disclosure under 18 U.S.C. § 2517(2) is limited by the scope of the investigative or law enforcement officer's official duties." *Certain Interested Individuals, John Does I-IV, Who Are Employees of McDonnell Douglas Corp. v. Pulitzer Pub. Corp.*, 895 F.2d 460, 467 (8th Cir. 1990) (noting that it is proper for an investigative officer to use Title III materials in preparing a search warrant); see also *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) (use of unsuppressed intercepts in briefs and memoranda), citing *United States v. Ricco*, 566 F.2d 433, 435 (2d Cir.), *cert. denied* 431 U.S. 905 (1977) (use of wiretap information to refresh witness's recollection) and *United States v. Rabstein*, 554 F.2d 190, 193 (5th Cir. 1977) (use of wiretap information for voice identification purposes). Further, to the extent that § 2517(2) might authorize the sharing of wire intercept information, "Congress, the legislative history securely indicates, had in mind information sharing 'within the law enforcement community.'" *American Friends Service Committee v. Webster*, 770 F.2d 29, 73 (D.C. Cir. 1983)

---

[2] We believe that the transcript is in error when it quotes AUSA Streeter as saying "[w]e would not apply under [sub]section 2 . . . ." We believe AUSA Streeter was referring to subsection 1.

[3] To the extent that the USAO needs the assistance of the SEC in the prosecution of its criminal case, that "use" can be accomplished by creating a firewall and utilizing SEC personnel on the USAO side of the wall, but shielding the rest of the SEC from the information. We also note that the USAO has had the assistance of the SEC throughout this matter, in the person of Andrew Michaelson who is an SEC attorney, designated as a Special Assistant United States Attorney.

**KELLEY DRYE & WARREN LLP**

The Honorable Jed S. Rakoff
Page Four

(holding that § 2517(2) did not authorize disclosure of Title III materials to National Archives personnel). We are aware of no case which holds that the Government's production of its entire compendium of wire intercepts in a criminal investigation to an agency having no criminal law enforcement power whatsoever constitutes a valid "use ... appropriate to the proper performance" of the prosecutors' and law enforcement agents' duties under § 2517(2).

The Justice Department's own legal advisor, the Office of Legal Counsel ("OLC"), does not endorse the USAO's position here. In a memorandum written in October 2000, OLC stated that the "most natural reading of the language [of §2517(2)] is . . . that the disclosure must be appropriate to the proper performance of **law enforcement** duties." 2000 WL 33716983, at p. 4 (Oct. 17, 2000) (emphasis added).[4] It goes on to say that "[t]he conclusion that §2517(2) authorizes disclosure of Title III material **only for purposes related to law enforcement** is buttressed by the purpose of Title III: **to maximize privacy**, consistent with permitting electronic surveillance for law enforcement purposes." (p.6) (emphasis added).

Further, the Government's position that § 2517(2) does, in fact, permit such wholesale disclosure to non-law enforcement personnel would completely eviscerate the plain meaning of § 2517(1). § 2517(1) specifically governs the limited circumstances under which law enforcement officers may disclose the contents of intercepts to others, and limits that disclosure to other law enforcement officers. If § 2517(2) were interpreted to provide the Government the means by which to disclose wire intercepts under a vastly broader range of circumstances than that provided in § 2517(1), then § 2517(1) would serve no purpose. This cannot be the correct statutory interpretation. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174, (2001). Rather, the more logical interpretation, and the one which reads the two subsections in conjunction with one another, is that § 2517(1) governs *disclosure* – the circumstances under which law enforcement officers may provide wire intercepts to others for the others' purposes — and § 2517(2) governs *use* — the circumstances under which law enforcement officers are permitted to utilize wire intercepts for their own purposes, i.e., criminal investigations and prosecutions, not civil lawsuits.

### C. SEC Motion to Compel – Level Playing Field

In terms of the SEC's motion pursuant to the Federal Rules of Civil Procedure, Your Honor addressed the "level playing field" argument and asked defendants to commit that

---

[4]　The Memo goes on to say "[H]ad Congress intended to permit broad sharing of the Title III information **among government entities with varying missions**, it could more easily have done so in §2571(1), by authorizing law enforcement officers to disclose Title III information to government employees generally rather than solely to other law enforcement officers." (emphasis added) (p. 4).

NY01/KENEJ/1397453.1

**KELLEY DRYE & WARREN LLP**

The Honorable Jed S. Rakoff
Page Five

they would not use the Title III Materials in the civil case. To the extent I equivocated in any respect during the hearing in response to Your Honor's query, I state explicitly that if the SEC does not have the Title III Materials, then defendant Danielle Chiesi will not use them in the civil case.

### D. SEC Motion to Compel – *New York Times*

At the hearing, Your Honor indicated that the Second Circuit's decision in *New York Times* was not controlling because it dealt with a motion for disclosure of wiretap application documents rather than the actual intercepted conversations. That is true, but, we submit, the distinction does not bear on the outcome here. Quite the contrary. There can be no doubt that the actual intercepted conversations implicate a higher level of privacy concerns than the wiretap applications. If the Second Circuit was unwilling to allow access to the wiretap application documents due to concerns about intrusiveness into individuals' privacy, then *a fortiori*, it would reach the same conclusion concerning the actual intercepted conversations.

For the foregoing reasons, we respectfully request that Your Honor deny the SEC's request that Ms. Chiesi produce the Sealed Title III Intercepts and Authorizations.

Sincerely,

*/s/ Alan R. Kaufman*

Alan R. Kaufman

cc: All Counsel of Record (by email)
    Assistant United States Attorney Jonathan Streeter (by email)
    Assistant United States Attorney Reed Brodsky (by email)
    Special Assistant United States Attorney Andrew Michaelson (by email)