# AKIN GUMP
# STRAUSS HAUER & FELD LLP

Attorneys at Law

TERENCE J. LYNAM
2028874045/fax: 2028874288
tlynam@akingump.com

January 27, 2010

VIA FACSIMILE

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10022

      Re:    *SEC v. Galleon Management, LP, et al.*, 09 Civ. 881 (JSR)

Dear Judge Rakoff:

      Defendant Raj Rajaratnam respectfully submits this letter responding to caselaw and arguments raised during the January 25, 2010 hearing on the SEC's Motion to Compel Production of Title III materials. Fundamentally, the plain text of Title III forecloses the disclosure in civil litigation of wiretaps that are under seal in a criminal case, in advance of the criminal trial and in advance of a motion to suppress. Controlling precedent and the consistent litigation position of the U.S. government itself for a quarter century (with the exception of this case) corroborate that plain meaning. Even more tellingly, the still-unexplained unwillingness of the SEC or USAO to seek authorization from Judge Holwell, who has jurisdiction over the sealed wiretaps, and the procedural contortions and strained citations that underlie their effort to compel Mr. Rajaratnam to be the instrument of his own constitutional and statutory privacy violations together confess the lack of authority for and impropriety of the motion to compel.

      1.    "Title III prohibits all disclosures not authorized therein." *Smith v. Lipton*, 990 F.2d 1015, 1018 (8th Cir. 1993) (en banc); *see United States v. Marion*, 535 F.2d 697, 700 (2d Cir. 1976) (Title III "prohibits, in all but a few instances, the . . . disclosure of wire or oral communications").[1] The Second Circuit shares that view. *See In re New York Times Co. Application to Unseal Wiretap*, 577 F.3d 401, 406-07 (2d Cir. 2009); *Marion, supra*. While, as Your Honor pointed out at the hearing, the disclosure sought in *NY Times* involved wiretap applications, the Second Circuit's analysis relied heavily on prior precedent involving wiretaps themselves and the strong privacy protections embodied in Title III's terms. *Id.* at 406-408. The court found that there was a "strong presumption" and a "categorical presumption" against the disclosure of both intercepted conversations and applications. *Id.* Indeed, rather than relegate

---

[1] *See also In re Grand Jury*, 111 F.3d 1066, 1078 (3d Cir. 1997) ("The statutory structure makes it clear that any interceptions of communications and invasions of individual privacy are prohibited unless expressly authorized in Title III."); *Lam Lek Chong v. United States Drug Enforcement Administration*, 929 F.2d 729, 732-33 (D.C. Cir. 1991) (Title III is "a comprehensive statutory scheme" with "strictly limited disclosure provisions").

The Honorable Jed S. Rakoff
January 27, 2010
Page 2

wiretaps to a lesser protected status, the court held that its earlier decision on wiretap disclosure (the *NBC* case) applied with equal force to the applications. *Id.* at 408 (*NBC* is "binding precedent" that "precludes" disclosure).[2] Thus, *NY Times'* presumption against the disclosure of both the applications and the wiretaps themselves controls here.

The SEC cannot overcome that strong and categorical presumption because Title III, the "statute on point," *NY Times*, 577 F.3d at 406, expressly prescribes the narrow circumstances under which Mr. Rajaratnam (or the government) may disclose wiretap material, 18 U.S.C, § 2517(1)-(3). Those exceptions do not include SEC civil litigation or disclosures in advance of a criminal trial and a related motion to suppress. To the contrary, Title III orders the wiretaps sealed, 18 U.S.C. § 2518(8), and released only in accordance with Title III's terms. *See Marion, supra*. In addition, Title III expressly requires notice prior to the disclosure of the wiretaps in any proceeding, and an opportunity for the court with custody of the wiretaps to adjudicate a motion to suppress *before* such disclosure takes place. 18 U.S.C. §§ 2518(9) & (10). Disclosure to the SEC here would directly transgress that explicit statutory provision.

Critically, while Congress crafted an express statutory authorization procedure for the release of wiretap applications upon a showing of "good cause," 18 U.S.C. § 2518(b), Congress did *not* enact an equivalent good-cause provision for release of the wiretaps themselves, instead limiting their disclosure to the narrowly specified terms of Section 2517.[3] Thus, at bottom, what the SEC asks this Court to do is to rewrite Title III to include an additional provision authorizing the release of the wiretaps themselves under a standard that would be *more lenient* than the one crafted for the arguably less sensitive wiretap applications. That is statutory reconstruction, not statutory interpretation. This Court's task is "to apply the provision as written, not as [it] would write it." *United States v. Demerritt*, 196 F.3d 138, 143 (2d Cir. 1999).[4]

---

[2] *See generally Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996) ("[I]t is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *ibid.* ("*[S]tare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.") (quoting *County of Allegheny v. ACLU*, 492 U.S. 573, 668 (1989) (Kennedy, J., concurring & dissenting in part).

[3] The SEC does not dispute its lack of "good cause" because it is not an aggrieved person. *See NY Times*, 577 F.3d at 406-411.

[4] Disclosure of Title III materials is even more limited than disclosure of grand jury materials because Congress also declined to enact a parallel to Federal Rule of Criminal Procedure 6(e)(3)(c), which permits a civil litigant to obtain grand jury evidence upon a specialized showing of need. *See Cullen v. Margiotta*, 811 F.2d 698, 715 (2d Cir. 1987) ("Requests for wholesale disclosures should generally be denied, especially in a civil case."). Further, disclosure of grand jury information can only occur by order of the criminal court in custody of that evidence, *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 225 (1979), even if – as the SEC complains here – one of the litigants to the civil litigation already has the

The Honorable Jed S. Rakoff
January 27, 2010
Page 3

2.  In its continuing quest to find *some* legal authority for its tactic, the USAO minted a new position for oral argument and contended that 18 U.S.C. § 2517(2) permitted it to share the information with the SEC without Court approval, invoking at oral argument four cases in which wiretaps were used in civil tax proceedings a quarter century ago. *See United States v. Fleming*, 547 F.2d 872 (5th Cir. 1977); *Griffin v. United States*, 588 F.2d 521 (5th Cir. 1979); *Resha v. United States*, 767 F.2d 285 (6th Cir. 1985); *Spatafore v. United States*, 752 F.2d 415 (9th Cir. 1985). That argument fails for two reasons.

*First*, those cases prove Mr. Rajaratnam's point. *Fleming, Griffin,* and *Spatafore* each involved the use of wiretap information by the government (i) that had *already been disclosed in criminal proceedings*, (ii) *after* the criminal proceeding concluded, and (iii) with no question of the wiretap's lawfulness pending. *See Fleming*, 547 F.2d at 873; *id.* at 875 ("We hold only that evidence derived from communications *lawfully* intercepted as part of a bona fide criminal investigation that results in the taxpayer's conviction may properly be admitted in a civil tax proceeding, *at least when the evidence is already part of the public record of the prior criminal prosecution*.") (emphases added); *Griffin*, 588 F.2d at 523 (identical to *Fleming*); *Spatafore*, 752 F.2d at 416-17; *id.* at 418 (wiretaps were "already part of the record in the criminal case"). The *Spatafore* court, moreover, expressly distinguished its holding from a case where there was no criminal prosecution and "[t]he evidence was not part of a public record." 752 F.2d at 418 n.1.

Thus, those cases stand only for the unexceptional proposition that already-disclosed wiretap information can be used *after* its lawfulness is settled and *after* the criminal trial. *See In re Application of Newsday, Inc.*, 895 F.2d 74, 76 (2d Cir. 1990) (wiretap evidence discoverable only after it had been used incident to criminal proceeding); *NY Times*, 577 F.3d at 407 n.3 (*Newsday* limited to evidence already made public in course of criminal proceeding). Importantly, rather than pre-authorize the government's authority to share such information for civil litigation (let alone to order the aggrieved party to produce it) – as the USAO argues – the Fifth Circuit expressly declined to decide whether the FBI's disclosure to the IRS was permitted, holding only that the remedy of suppression is not available for unlawful disclosures. *Fleming*, 547 F.2d at 874. Likewise, while *Resha* did not involve prior disclosure in a criminal proceeding, the Sixth Circuit in that case held only that suppression was not an available remedy for an improper disclosure. 767 F.2d at 287-288. In short, even if Mr. Rajaratnam were permitted to disclose wiretap evidence in response to a civil discovery request notwithstanding the plain text of Title III, and even if the SEC were permitted to receive and use it in the course of a civil proceeding, notwithstanding the plain text of Title III, it would still be impermissible to order the wholesale disclosure of 14,000 wiretap intercepts before criminal proceedings have

---

evidence, *id.* at 225 n.17. No less protection applies to wiretap information that Congress roped about with even more rigid limitations on disclosure.

The Honorable Jed S. Rakoff
January 27, 2010
Page 4

concluded, before the legality of those intercepts is resolved, and before the permission of the court controlling the seal is sought.[5]

It would be difficult to overstate the severe and irreparable damage to Mr. Rajaratnam's statutory and constitutional rights that the USAO's discredited theory would inflict. Mr. Rajaratnam has a statutory right to challenge the legality of wire interceptions before they are disclosed in any proceeding, *see* 18 U.S.C. § 2518, that would be irreversibly compromised if the USAO were to release thousands of untested wire intercepts for use by twenty parties to a civil lawsuit. Such a voluminous disclosure would also profoundly and irretrievably transgress Mr. Rajaratnam's Fourth, Fifth, and Sixth Amendment rights to privacy, due process, and a fair trial – rights that only the firm wall that Congress erected in Title III can properly protect. *See United States v. Sells Eng'g*, 463 U.S. 418, 432 (1983) (disclosure in civil litigation "increase[s] the risk of inadvertent or illegal release"); *See United States v. Gerena*, 869 F.2d 82, at 85-86 (2d Cir. 1989).

***Second***, the USAO's proffered reading of Section 2517(2) is wrong and has been expressly rejected by the U.S. Justice Department. To be clear, Mr. Rajaratnam does not dispute that the USAO can use the wiretap evidence when seeking the assistance or consultation of SEC personnel, "to the extent such use is appropriate to the proper performance" of *criminal prosecutorial duties*. 18 U.S.C. § 2517(2). That is precisely the function presumably being served by SAUSA Michaelson, an SEC attorney assisting the criminal prosecutors.

However, as the Justice Department's Office of Legal Counsel explained, Title III forbids any transfer between federal agencies except as "appropriate to the proper performance of *law enforcement duties*," as those duties are narrowly defined in Title III. Office of Legal Counsel, Dep't of Justice, *Sharing Title III Electronic Surveillance Materials with the Intelligence Community*, 2000 WL 33716983, at *3 (Oct. 17, 2000) (emphasis in original). Tellingly, in explaining the United States' position, OLC offers precisely the same reading of the USAO's civil tax cases as Mr. Rajaratnam, and rejects precisely the reading advanced by the USAO, *id.* at *5. The USAO's position, in fact, expressly contravenes OLC's directive that "appropriate to the proper performance of . . . official duties" must "be construed narrowly," OLC, *supra*, 2000 WL 33716983, at *3. The USAO's position also ignores Section 2517(1), which permits disclosure by one investigative or law enforcement officer to another only as appropriate to each officer's official duties. The USAO's broad reading of Section 2517(2) as permitting disclosure for non-law enforcement purposes would render subsection (1) redundant surplusage, which courts cannot do, *ibid.*; *Filler v. Hanvit Bank*, 378 F.3d 213, 220 (2d Cir. 2004). The USAO's new reading also defies the legislative history of Title III, which limits disclosure to the prescribed law enforcement functions, OLC, *supra*, 2000 WL 33716983, at *4, and disregards "Congress's

---

[5] The civil tax cases also simply reflect the prosecutorial reality that the IRS is often intimately involved in criminal prosecutions authorized by Title III and the tax proceedings arise *after* the criminal case has concluded, as the Court noted during oral argument. 1/25/10 Tr. at 41-42.

The Honorable Jed S. Rakoff
January 27, 2010
Page 5

effort in Title III to protect privacy to the maximum extent possible," *id.* at *3. Indeed, given OLC's conclusion that wiretaps can only be shared with the intelligence community as part of a Title III law enforcement proceeding, *id.* at 7, it blinks reality to conclude that the same statutory text is somehow uniquely solicitous of SEC proceedings. Finally, if the USAO and SEC were correct, surely they could offer the Court some authority, some precedent, some established practice besides a handful of twenty-five year old cases that are not even on point.[6] That it cannot and has not done so speaks volumes.[7]

3.　　Lacking any support in statutory text, controlling precedent, or the longstanding positions of the U.S. government opposing disclosure in civil litigation in advance of criminal proceedings, the SEC decries the supposed unfairness of withholding the wiretaps from it. That argument fails both practically and legally. It fails practically because, as explained at the hearing, Mr. Rajaratnam has no intention of using the wiretap materials in the SEC case and, in fact, intends to seek their suppression in the criminal case. If anything is unfair, it is the USAO's and SEC's procedurally contorted and unprecedented effort to use civil discovery mechanisms to force a criminal defendant to produce for civil litigation wiretaps that were unlawfully obtained in advance of any suppression ruling and in advance of the criminal trial, without so much as a nod to the Judge with jurisdiction over the sealed wiretaps.

It fails legally because Congress has already struck the proper balance between privacy rights and the government's legitimate law enforcement needs in Title III's rules sharply delimiting the authorization and use of wiretaps. *Newsday*, 895 F.2d at 76; *Gerena*, 869 F.2d at 85-86; *In re Grand Jury*, 111 F.3d 1066 (3d Cir. 1997) ("[W]hen enacting Title III, Congress performed all of the balancing necessary of the public interest in law enforcement against the privacy interests of citizens."). The proper solution to any perceived inequity is not for the government to ask this Court to rewrite the statutory text to include a civil discovery exception that Congress omitted, but for the government to stagger its civil and criminal litigation. That would ensure that the lawfulness of the wiretaps is adjudicated in advance of any disclosure, as 18 U.S.C. § 2518 (9) and (10) contemplate, and that any disclosure is limited to those wiretap materials already made a matter of public record in the criminal proceeding.

---

[6] As the Second Circuit explained in *NBC*, the USAO's cases arose during an era before the "Department of Justice had focused on the problem" of disclosures in civil litigation and before it adopted its "policy of non-disclosure," which explains the government's lack of any modern authority for its position. *In re Application of Nat'l Broad. Co.*, 735 F.2d 51, 54-55 (2d Cir. 1984).

[7] In light of the USAO's newly articulated position and in an abundance of caution, Mr. Rajaratnam intends to seek a protective order in the criminal case prohibiting the USAO's unilateral disclosure to the SEC. *Cf. Douglas Oil Co.*, 441 U.S. at 225-28 (explaining that the criminal supervisory court "is in the best position to determine the continuing need for grand jury secrecy," and recommending "coordinati[on] of the informed views of both the civil trial court and the grand jury court concerning the propriety of disclos[ure]").

The Honorable Jed S. Rakoff
January 27, 2010
Page 6

                                          Respectfully submitted,

                                          */s/ Terence J. Lynam*

                                          Terence J. Lynam (*pro hac vice*)
                                          John M. Dowd (*pro hac vice*)
                                          William E. White (*pro hac vice*)

                                          *Attorneys for Defendant Raj Rajaratnam*

cc:    Assistant United States Attorney Jonathan Streeter
        Assistant United States Attorney Reed Brodsky
        Special Assistant United States Attorney Andrew Michaelson
        Valerie A. Szczepanik, SEC Senior Trial Counsel