

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 27, 2010

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
New York, NY 10007

      Re:    SEC v. Galleon Management, LP, et al., 09 Civ. 8811 (JSR)

Dear Judge Rakoff:

      On January 20, 2010, the Government submitted a letter to Your Honor in which it argued that because the wiretap evidence produced to the defendants in the parallel criminal case is relevant to the issues in this case and because the wiretap statute does not address or preclude the defendants' production of that evidence in discovery in this case, this Court should grant the Securities and Exchange Commission's ("SEC") motion to compel production. At the conference before Your Honor on January 25, 2010, the Court inquired whether the Government could produce the wiretap evidence directly to the SEC under some separate authority. For the reasons set forth below and those previously given during the conference before Your Honor, the Government submits that it can provide that evidence directly to the SEC. The legal bases for such a production by the Government to the SEC are separate and apart from the civil rules that call for production by the defendants to the SEC in this case.

I.    **Disclosure Is Authorized Pursuant to 18 U.S.C. § 2517(2)**

      Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") provides, in relevant part:

> Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his duties.

18 U.S.C. § 2517(2).[1]

---

[1] Under Title III, AUSAs and FBI agents, among others, are clearly "investigative and law enforcement officers." 18 U.S.C. §§ 2510(7) and 2516. For purposes of the discussion herein of Section 2517(2), the Government assumes *arguendo* that SEC staff are not. However, as explained in Section II below, the SEC are law enforcement officers who can receive Title III evidence pursuant to 18 U.S.C. § 2517(1).

The Government submits that it can disclose the wiretap recordings to the SEC because "such use is appropriate to the proper performance of [the Government's] official duties." 18 U.S.C. § 2517(2). Disclosure of the wiretap evidence will facilitate continued cooperation between the SEC and the Government in pursuing their respective investigations. In addition, disclosure will help ensure that the discovery in this case, including depositions of witnesses in the criminal case, proceeds on a level playing field. Finally, the privacy interests of those intercepted can be protected by requiring that the Government's production to the SEC is subject to an appropriate protective order limiting the SEC's use and disclosure of that evidence.

The Second Circuit has made clear that under Section 2517(2), appropriate "use" includes disclosure. For example, in *United States v. Donlan*, 825 F.2d 653, 656 (2d Cir. 1987), the court held that § 2517(2) permits law enforcement officers to use and disclose the contents of tapped conversations to establish probable cause for arrest or probable cause to search. The Second Circuit has also held that under § 2517(2) the Government can disclose wiretapped conversations to third parties for purposes of refreshing recollection before trial, *even though those wiretaps had been suppressed by the court*. *United States v. Ricco*, 566 F.2d 433, 435-36 (2d Cir. 1977).

As the Government noted during the conference before Your Honor, Courts of Appeal outside the Second Circuit have considered the Government's sharing of wiretap evidence with government agents who do not qualify as "investigative and law enforcement officers" under Title III. The Fifth and Ninth Circuits have held that it was appropriate for FBI agents, in furtherance of their proper performance of their official duties, to provide wiretap interceptions to the IRS revenue agents.[2] In *United States v. Fleming*, 547 F.2d 872, 873-75 (5th Cir. 1977), and *United States v. Griffin*, 588 F.2d 521, 523-24 (5th Cir. 1979), taxpayers challenged civil money judgments against them, alleging that IRS revenue agents improperly obtained wiretaps in violation of the statute. The Court rejected the taxpayers' claim that the FBI's disclosures violated Sections 2515 or 2517. The sequence of events in both cases was similar: (1) the FBI obtained lawful wiretaps as part of a criminal investigation; (2) the FBI briefed IRS civil agents on their contents; (3) the IRS made a tax liability calculation based, in part, on the wiretaps; (4) portions of tapped conversations later become part of the public record in criminal proceedings; (5) the FBI transmitted additional evidence derived from tapped conversations to the IRS; and (6) the IRS recalculated the tax liability and filed suit against the taxpayers. *Griffin*, 588 F.2d at 525.

In analyzing whether the disclosures were proper, the Fifth Circuit found that there was no evidence that the original criminal investigation was a "subterfuge for developing information for civil tax proceedings," and that there was no infringement on a privacy interest caused by disclosure from one agency to another. *Fleming*, 547 F.2d at 874; *Griffin*, 588 F.2d at 525. More significantly, both Courts found that Section 2517(2) permitted FBI agents to disclose the tapped conversations to the IRS revenue agents. *Fleming*, 547 F.2d at 874-75; *Griffin*, 588 F.2d at 526.[3] Finally, both *Fleming* and *Griffin* noted that the civil authorities could have called (or

---

[2] During the conference before Your Honor, the undersigned mistakenly stated that the *Fleming* and *Griffin* decisions were issued by the Sixth Circuit. As noted above, they were decided by the Fifth Circuit.

[3] The *Fleming* Court did narrow its holding to "evidence derived from communications lawfully intercepted as part of a bona fide criminal investigation that results in the taxpayer's

2

actually did call) an FBI agent to testify about the intercepted communications at the civil trial pursuant to Section 2517(3), and that such testimony was permitted by statute.

Similarly, in *United States v. Spatafore*, 752 F.2d 415 (9th Cir. 1985), a taxpayer sought to suppress in a civil tax proceeding wiretap evidence that the FBI obtained during its criminal investigation of the taxpayer's gambling business. Several months *before* the taxpayer was indicted, the FBI transmitted a copy of the intercepted conversations to an IRS special agent who in turn sent a copy to a civil IRS revenue agent. The revenue agent then made a tax assessment. *Id.* at 416-17. The Ninth Circuit held that the district court properly denied the taxpayer's motion to suppress or exclude the wiretap evidence from his civil tax proceeding. *Id.* at 418. In so doing, the Ninth Circuit relied on Section 2517(2) and affirmed the district court's decision to allow an FBI agent's testimony about the interceptions pursuant to Section 2517(3).[4]

*Fleming*, *Griffin*, and *Spatafore* support the Government's position that it can provide the contents of intercepted communications to the SEC in furtherance of its official duties. First, in each of these cases, the FBI disclosed intercepted communications to the IRS while performing official duties, which the Government proposes to do here. Second, in each case, the FBI's criminal investigation was real, not a subterfuge for the civil authorities, and the taxpayers were indicted for federal crimes. The same is obviously true here, as numerous individuals have been charged with federal crimes. Third, in the three cases described above, because at least part of the intercepted conversations eventually became public following indictment in the criminal proceeding, the courts found that prior disclosure to civil authorities did not significantly infringe privacy interests. Here, upon the unsealing of the criminal complaints, the content of numerous intercepted conversations of the defendants became public, and many more will likely be made public at the criminal trials. Fourth, in *Fleming*, *Griffin*, and *Spatafore*, the Government never sought the district court's prior approval to disclose the intercepted conversations to IRS revenue agents, whereas here, as an alternative to production by the defendants to the SEC, the Government is seeking that approval.[5] Finally, in each of the Fifth and Ninth Circuit cases, the courts stated that civil authorities were permitted to call FBI agents to testify about the interceptions pursuant to Section 2517(3) and (5).

---

conviction may properly be admitted in a civil tax proceeding, at least when the evidence is already part of the public record of the prior criminal prosecution." 547 F.2d at 875.

[4] The Sixth Circuit in *United States v. Resha*, 767 F.2d 285, 288 (6th Cir. 1985), did not reach the issue of whether FBI disclosure of wiretap evidence to IRS revenue agents violated Section 2517 because Title III "did not authorize suppression of the evidence in [that] action, regardless of whether the disclosure violated § 2517."

[5] Yesterday, the Government learned that, in mid-December 2009, it inadvertently provided the SEC with recordings of certain communications intercepted pursuant to Title III, all of which had been previously described in the criminal complaint captioned *United States v. Zvi Goffer*, 09 Mag. 2438. The *Goffer* complaint was unsealed on November 5, 2009. These recordings were provided to the SEC as part of a larger production of consensually-recorded calls that are not subject to Title III. Upon learning of this inadvertent disclosure, the SEC immediately returned all the recordings the Government produced in mid-December and confirmed that the SEC did not retain any copies.

3

In addition to these decisions, permitting the Government to disclose wiretap evidence to the SEC under Section 2517(2) is consistent with Congressional and judicial recognition that criminal authorities often consult the SEC regarding potential violations of federal securities laws. Congress has determined that the proper administration of justice requires a "close working relationship" between the Department of Justice and the SEC to maximize the effectiveness of federal law. *United States v. Fields*, 592 F.2d 638, 646 & n.19 (2d Cir. 1978). The Securities Act of 1933 and the Securities Exchange Act of 1934 "expressly authorize the SEC to transmit such evidence as may be available ... to the Attorney General, who may, in his discretion, institute the necessary criminal proceedings," and those statutes "impose no limitation on when this transmittal may occur." *SEC. v. Dresser Industries, Inc.*, 628 F.2d 1368, 1385 (D.C. Cir. 1980) (internal citations and footnote omitted); *see also* 15 U.S.C. § 78u(d). The legislative histories behind both these securities acts recognize that close cooperation between the SEC and the Department of Justice is necessary in preparing cases for civil and criminal enforcement. 628 F.2d at 1385-86.

In this case, the Government proposes to disclose the wiretap evidence to the SEC for several reasons, all of which are "appropriate to the proper performance of [its] official duties." 18 U.S.C. § 2517(2). First, by disclosing this evidence to the SEC, the SEC will be much better able to lend its expertise and assistance to the Government in evaluating potential securities laws violations by the defendants and others as both the SEC and the Government continue their respective investigations.

Second, the discovery and trial of this civil proceeding before Your Honor may have a substantial impact on the witnesses who testify in the criminal trial. There are numerous witnesses who may testify in both proceedings. If those witnesses are deposed or testify at trial in this case while certain defendants enjoy a significant informational advantage over the SEC – as they do now because they have the wiretap evidence – the testimony of those witnesses will not be the product of a fair adversarial proceeding. That testimony, whether in depositions or at the trial of this case, will in turn be used to cross examine various Government witnesses at the criminal trial. In short, the Government has an interest in ensuring a level playing field during this proceeding so that its witnesses are not unfairly undermined.

Third, the Government has a broader interest in enforcing the federal securities laws. The SEC is statutorily charged with civil enforcement of those laws while the Department of Justice is charged with criminal enforcement of those laws. Providing the wiretap evidence to the SEC will help the SEC and the Government each fulfill this broader mission.

## II. Disclosure Is Authorized Pursuant to 18 U.S.C. § 2517(1)

Finally, while the discussion above assumes *arguendo* that SEC staff members are not law enforcement officers under Title III, disclosure of the contents of the wiretaps to the SEC is also authorized under 18 U.S.C. § 2517(1).[6] That Section provides:

---

[6] The analysis in this section applies only to the Government's ability to produce wiretap evidence to the SEC.

4

>Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

The term "investigative or law enforcement officer" is defined in Section 2510(7) as "any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter." Section 2516 contains a list of offenses for which authorization may be obtained to intercept wire communications. Wire fraud in violation 18 U.S.C. § 1343 is included on this list, but securities fraud is not.

The absence of securities fraud in Section 2516 does not mean that the SEC is not an investigative officer under Title III. *See Berg v. Michigan Attorney Grievance Commission*, 49 F.3d 1188, 1191 (6th Cir. 1995) (finding that members of the Michigan Attorney Grievance Committee, which is authorized to investigate misconduct of attorneys, are investigative officers under Title III even though "professional misconduct" is not enumerated in Section 2516; FBI therefore authorized to disclose intercepted communications to the committee under Section 2517(1)); *In re Motion to Disclose Intercepted Communications*, 594 F. Supp.2d 993, 998 (N.D.Ill. 2009)(authorizing disclosure of intercepted communications pursuant to Sections 2517(1) and (2) to members of the Illinois House of Representatives Special Investigative Committee, which was authorized to conduct investigations of "misfeasance, malfeasance, nonfeasance, and other misconduct"). In fact, an investigative officer under Title III "does not derive its authority from the list of enumerated offenses [in Section 2516], but rather from 'law.'" *Berg* 49 F.3d at 1191. In other words, the inquiry begins not with the list of criminal offenses set forth in Section 2516, but rather with the "law" that authorizes the investigative officer to conduct investigations.

The SEC is authorized by law to conduct investigations of securities fraud. As Your Honor noted correctly at the conference on this matter, a securities fraud violation contains all of the elements of a wire fraud violation. Thus, any investigation of securities fraud is necessarily also an investigation of wire fraud. Moreover, there is no question that it is appropriate for the SEC to share with the Government the fruits of an SEC investigation that reveals evidence of wire fraud. In short, the greater authority that the SEC possesses under law to investigate securities fraud necessarily includes the lesser authority to investigate wire fraud. *In re Motion to Disclose Intercepted Communications to the U.S. Senate Select Committee on Ethics*, 610 F. Supp.2d 954, 957 (N.D.Ill. 2009)(concluding that the Senate Ethics Committee's power to investigate "violations of law" is "broad enough to encompass those violations of the federal criminal code listed in Section 2516"). Because wire fraud is a criminal offense enumerated in Section 2516 and the staff of the SEC are empowered by law to investigate wire fraud, they are "investigative or law enforcement officers" under Title III. Accordingly, the Government may disclose the contents of wiretaps to the SEC under Section 2517(1) so long as such disclosure is appropriate to the proper performance of either the Government's or the SEC's official duties. Here such disclosure would be an appropriate performance of those duties.

## Conclusion

For the foregoing reasons, as well as those provided at the conference and in the Government's letter of January 20, 2010, the Government submits that this Court should compel the defendants to produce the wiretap evidence in discovery, or, in the alternative, should permit the Government to disclose that evidence directly to the SEC.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: *[signature]*

JONATHAN R. STREETER
REED M. BRODSKY
Assistant United States Attorneys
ANDREW Z. MICHAELSON
Special Assistant United States Attorney
(212) 637-2272/2492/2348

cc:  counsel for the SEC (by email)
     defense counsel (by email)