## KELLEY DRYE & WARREN LLP
A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**
**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

DIRECT LINE: 808-5395
EMAIL: akaufmann@kelleydrye.com

January 29, 2010

**VIA FACSIMILE (212) 805-7935**

The Honorable Jed S. Rakoff
United States District Judge
United States Courthouse
New York, New York 10007

    Re:    *SEC v. Galleon Management, L.P. et al.*, 09 Civ. 8811 (JSR)

Dear Judge Rakoff:

On behalf of Danielle Chiesi, we write in response to the January 27, 2010 letters submitted by the Securities and Exchange Commission ("SEC") and the U.S. Attorney's Office (the "USAO").

A.    The SEC's Letter Raises Arguments That We Already Demonstrated Lack Merit

Virtually none of the SEC's January 27 letter addresses any new issue on which the Court requested further briefing. Rather, the SEC merely reiterates the arguments that it made in its January 20 letter, each of which we demonstrated lacked merit in our January 22 letter. For example, the SEC contends that *In re Newsday*, 895 F.2d 74 (2d Cir. 1990) specifically rejects the premise that Title III prohibits any disclosure that is not specifically authorized by 28 U.S.C. § 2517. However, as set forth in our January 22 letter, no part of *In re Newsday* addresses, much less rejects, the decisions by other Courts of Appeal, which hold that sealed Title III materials may not be disclosed unless § 2517 specifically authorizes their disclosure.

The SEC also argues that "[t]he only logical reading of § 2517(3) is that the Commission may use discovery to obtain [the sealed Title III intercepts] in its preparation for trial." As shown in our January 22 letter, however, the Second Circuit has rejected this argument and held that § 2517 does not permit production of sealed Title III materials as part of the civil discovery process. *See Nat'l Broad. Co. v. Dep't of Justice*, 735 F.2d 51, 53-54 (2d Cir. 1984). The cases on which the SEC relies are inapposite. In *Fleming v. United States*, 547 F.2d 872 (5th Cir. 1977), the intercepts had already been publicly disclosed at a previous trial. In contrast, the intercepts at issue here have not been previously disclosed publicly. Also, as set forth in our January 22 letter, *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621 (7th Cir. 2000) involves consensual recordings taped by a party to the conversation – not sealed communications intercepted by the government like those at issue here.

NY01/ZAUMD/1397938.1

**KELLEY DRYE & WARREN LLP**

Hon. Jed S. Rakoff
January 29, 2010
Page Two

The SEC also argues that defendants should produce the sealed Title III materials merely because the SEC has produced investigative files that it deems confidential. This argument, however, lacks merit because there is no statutory prohibition to the SEC's disclosure of its investigative file, whereas § 2517(3) prohibits disclosure of the sealed Title III materials by Ms. Chiesi.

B.　　The USAO Disclosure To The SEC – Sections 2517(1) and (2)

The first four pages of the USAO's January 27 letter addresses the four cases that it raised during the January 25 oral argument concerning 18 U.S.C. § 2517(2). As shown in Sections A and B of our January 27 letter, none of these cases support the USAO's argument that disclosure of the sealed Title III Intercepts by the USAO is warranted under the circumstances present here.

The USAO also argues that disclosure under §2517(2) is appropriate because it is supposedly "consistent with Congressional and judicial recognition that criminal authorities often consult the SEC regarding potential violations of securities laws." The USAO, however, cites no case law that provides that "the close working relationship" between the SEC and the USAO entitles the USAO to disclose sealed Title III Intercepts to the SEC. Rather, the USAO cites *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1385 (D.C. Cir. 1980) and *United States v. Fields*, 592 F.2d 638, 646 (2d Cir. 1978), which are each inapposite because they hold the SEC can turn investigatory materials over to the Department of Justice. These cases in no way suggest that the converse is true. Nothing in the plain text of 18 U.S.C. § 2517(2) supports such use of sealed Title III Intercepts.

Toward the end of its January 27 letter, the USAO reverses gears with respect to its position concerning § 2517(1). Contrary to its prior representations, the USAO now claims that disclosure to the SEC by the USAO would be proper under § 2517(1). If the law is as clear as the USAO now asserts it to be, one has to wonder why this claim was not pursued earlier (and indeed was conceded to be not an authorized disclosure). Perhaps it is because the USAO's current interpretation of §2517(1) is contrary to the conclusion reached by the Department's Office of Legal Counsel ("OLC"). *See* OLC Memo, 2000 WL 33716983 (Oct. 17, 2000).

The issue hinges on the phrase "investigative or law enforcement officer" found in § 2517(1). Section 2510(7) offers the definition:

> "Investigative or law enforcement officer" means any officer of the United States or of a State . . . , who is empowered by law to conduct investigations of . . . offenses enumerated in this chapter . . . .

The SEC is plainly not empowered to conduct investigations of offenses enumerated in Title III. Rather, the SEC's investigatory powers are limited to certain offenses outlined in Title 15, none of which are included as a predicate offense in 18 U.S.C. § 2516. The OLC's Memorandum makes this point clear: "An 'investigative or law enforcement officer,' however, must have the power to investigate . . . offenses enumerated in section 2516."

**KELLEY DRYE & WARREN LLP**

Hon. Jed S. Rakoff
January 29, 2010
Page Three

This makes perfect sense. Otherwise, there would be no limiting principle to disclosure of sealed intercepts, and § 2517(1) would be meaningless. Virtually every federal agency has some investigatory function. Without limiting authorized disclosures to those agencies that are empowered to investigate Title III predicate offenses, virtually all federal agencies would be eligible to receive Title III intercepts, which is clearly contrary to the purpose of Title III. The USAO's current position would allow for "a highly elastic limitation on disclosure among law enforcement officers -- **a result that seems unlikely in light of Congress's effort in Title III to protect privacy to the maximum extent possible,** consistent with permitting electronic surveillance for law enforcement purposes . . . ." OLC Memo, 2000 WL 33716983, at 4 (emphasis added).

The USAO also makes the totally unsupported claim that the SEC is "empowered by law to investigate wire fraud." The USAO is wrong. The SEC's investigative authority is limited to "determin[ing] whether any person has violated, is violating, or is about to violate any provisions of this title..." See 15 U.S.C. § 78(u). Title 15 makes no mention of wire fraud. Rather, Title 15 is limited to securities violations.

The USAO's reliance on *In Re Electronic Surveillance (Berg)*, 49 F.3d 1188 (6th Cir. 1995) is misplaced. *Berg* involved an attorney who was intercepted by Title III surveillance in connection with an FBI investigation of judicial corruption in Michigan. Berg was not charged criminally, but at the conclusion of its investigation, the federal government referred the matter to the Michigan Attorney Grievance Commission ("MAGC"). The court allowed disclosure of Title III materials to the MAGC. We believe *Berg* was wrongly decided because its holding is contrary to the plain language of § 2517(1). In any event, it is distinguishable from the facts presented here. *Berg* acknowledges that "professional misconduct" is obviously not an enumerated offense under Title III, but nonetheless allows disclosure because MAGC is empowered to investigate attorney misconduct which would be a violation of a Title III predicate offense. In so doing, it cites to *Scott v. United States*, 573 F. Supp. 622 (M.D. Tenn. 1983), rev'd on other grounds, 767 F.2d 285 (6th Cir. 1985), as contrary authority which held that "IRS agents were not allowed to Title III information to assess additional excise taxes" because § 2510(7):

> [C]learly limits the officials authorized to make or receive 2517(1) disclosures by defining investigative or law enforcement officer in terms of the enumerated offenses in section 2516, none of which concerns a violation of the Internal Revenue Code. **To ignore the clear meaning of that limitation renders nugatory both section 2510(7) and section 2517. . . .**

*Id.* at 625 (emphasis added). *Berg* then distinguished *Scott* by saying:

> The gist of [Scott] is that if the officer could not have gotten the wiretap himself or herself in the first instance, then he or she cannot get its contents later from another officer who could and did obtain lawfully a wiretap. **This line of reasoning makes some sense when the officer receiving the information is a federal officer, because presumably if he or she had the**

KELLEY DRYE & WARREN LLP

Hon. Jed S. Rakoff
January 29, 2010
Page Four

**authority under federal law to investigate the enumerated offenses, he or she also had the authority to get his or her own wiretap.** This reasoning does not fit the bill when the receiving officer is a state officer, however, because a state officer could not obtain his or her own wiretap in the first instance.

Our case fits within the *Berg* court's *Scott* distinction, and thus *Berg* would have decided our fact pattern consistent with *Scott*, and denied disclosure.

The USAO's reliance on *In re Motion to Disclose Intercepted Conversations (Blagojevich)*, 594 F. Supp. 2d 993 (N.D. Ill. 2009) is also misplaced. That case, as described by the district judge, was "exceptional" and "unprecedented," involving the possible impeachment of a sitting Governor. Moreover, the proposed disclosure of Title III material to a specially convened Investigative Committee of the Illinois legislature was limited to four specific intercepts in redacted form, and was not opposed by any of the individuals whose conversations were intercepted. In contrast, here, the USAO proposes wholesale disclosure of the sealed Title III materials consisting of literally thousands of conversations regardless of their relevance, and Ms. Chiesi and others have vigorously opposed disclosure. Also, the court in *Blagojevich* permitted disclosure because it found the members of the Special Investigation Committee to be "investigative officers" under § 2517(1), relying in part on the *Berg* precedent, and concluding that the Committee was authorized to investigate conduct constituting predicate offenses enumerated in § 2516. The same cannot be said about the SEC — it is not authorized to conduct investigations of Title 18 conduct.

Accordingly, the USAO's argument that disclosure of the sealed Title III Intercepts to the SEC under § 2517(1) should be rejected, and the SEC's motion to compel should be denied.

Sincerely,

Alan R. Kaufman

cc: All Counsel of Record (by email)
    Assistant United States Attorney Jonathan Streeter (by email)
    Assistant United States Attorney Reed Brodsky (by email)
    Special Assistant United States Attorney Andrew Michaelson (by email)