

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
3 WORLD FINANCIAL CENTER, RM 400
NEW YORK, NEW YORK 10281-1022

January 29, 2010

**Via Facsimile**
The Honorable Jed S. Rakoff
United States District Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:   *SEC v. Galleon Management, LP et al.; 09 Civ. 8811 (JSR)*

Dear Judge Rakoff:

    As set forth below: 1) defendants continue to fail to acknowledge that no provision of Title III prohibits their disclosure of relevant Title III material to the Commission in response to a valid discovery request; 2) Title III prohibits disclosure of Title III materials received by defendants in a criminal proceeding only where it is done to obstruct justice; 3) the Second Circuit has consistently held that Title III does not address disclosure of Title III materials when portions have already been made public, as here; 4) the cases defendants rely upon are not relevant where discovery is sought by a government agency protecting important public interests from a litigant in possession of Title III materials; and 5) the public interest in enforcing the securities laws and the Commission's right to a level playing field outweigh defendants' diminished privacy interests, especially where key portions of the requested Title III materials have already been disclosed in criminal charging documents that have received widespread media attention.

        Title III Does Not Prohibit Disclosure of the Requested Materials
    Despite repeated opportunities to do so, defendants have failed to contradict, or even acknowledge, the Commission's core claim that there is no language in Title III that prohibits a private litigant from disclosing Title III material legitimately in its possession in response to a discovery request by its government adversary. Instead of addressing this controlling fact head-on, defendants fall back on the mantra that "Title III prohibits all disclosures not authorized therein." (Rajaratnam Letter Brief dated January 27, 2010 ("R.L.B.") at 1.) However, defendants fail to point this Court to any language in Title III that actually supports this claim and there is no such language. Instead, defendants rely on cases that do not support this claim.

    Rajaratnam cites *Smith v. Lipton*, 990 F.2d 1015, 1018 (8th Circuit 1993), as his primary authority for this claim. That case involved a private suit between two parties, neither of whom already possessed Title III material. The Eight Circuit's sole authority for its conclusory claim that Title III prohibits all disclosures not authorized therein was not any language in the statute itself, but rather citation to two cases, neither of which themselves support such a claim. See *Smith*, 990 F.2d at 1018 (citing *United States v. Underhill*, 813 F.2d 105, 110 (6th Cir. 1987) and

United States v. Dorfman, 690 F.2d 1230, 1232 (7th Cir. 1982)). Underhill involved an unrelated question whether § 2515's exclusionary rule precluded the government from introducing telephone conversations illegally taped by defendants. The Court's dicta was not supported by reference to any language in Title III or to any specific finding of Congress. See Underhill, 813 F.2d at 1232. Dorfman involved an unrelated question whether a newspaper could compel disclosure of sealed Title III materials on the eve of a criminal trial. The Court's statement that Title III "implies that what is not permitted is prohibited" was not supported by language of statute and ignores § 2511(1)(e)'s clear guidance that only obstructive disclosure by defendants in receipt of Title III material is prohibited. See Dorfman, 690 F.2d at 1232.

Similarly, In re New York Times, 577 F.3d 401, 406-407 (2d Cir. 2009), involved the unrelated question of a newspaper's right to obtain sealed wiretap materials under the "good cause" provision of § 2518(8)(b). Importantly, the Second Circuit reaffirmed its statement in In re Application of Newsday, Inc., 895 F.2d 74, 76-78 (2d Cir. 1990), that "[Title III] does not ... address the issue of public access to intercepted communications when those communications become part of a public document." Id. 577 F. 3d at 407. The Court also stated: "Nowhere does Title III state rules regarding disclosure of intercepted communications to the public incident to, or after, their use under Section 2517." Newsday, 895 F.2d at 78. The Court further noted that balancing a party's Title III privacy interests with the right of access is "best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Id. (citations omitted). Finally, the Newsday Court, in approving the release of Title III material, relied on the significant fact that the government did not oppose the disclosure of the requested Title III materials. Id. Thus, both the New York Times and the Newsday cases support the Commission's position that Title III does not prohibit the disclosure of Title III materials already disclosed to defendants, or already disclosed in public documents, particularly where the USAO is actively advocating for their release to further its own law enforcement goals. The cases cited by Rajaratnam are unavailing.[1]

Disclosure Is Not Limited to § 2517(1)-(3)
Rajaratnam's claim that disclosure is limited to the provisions of § 2517 (1)-(3) (R.L.B. at 2, 3) is also incorrect. There is simply no language in § 2517 or any other provision of Title III that states that Title III materials may only be disclosed under those sections. Moreover, § 2511(1)(e), which makes it illegal for a defendant in possession of Title III material to disclose them only where such disclosure is for purposes of obstructing a criminal investigation, clearly otherwise permits non-obstructive disclosure of Title III materials by such defendants. Where Congress clearly focused on disclosure by non-governmental actors and made a decision to prohibit such disclosures only where they are done to obstruct justice, the specific language of this provision should control over any general argument as to Congress's intent. Finally, the Second Circuit has made clear that Title III does not address disclosure of Title III materials already in the public record. See, e.g., In re NewYork Times and Newsday, discussed supra.[2]

---

[1] United States v. Marion, 535 F.2d 697, 700 (2d Cir. 1976) and Lam Lek Chong v. DEA, 929 F.2d 729, 732-33 (D.C. Cir. 1991) do not further advance defendants' arguments.

[2] Rajaratnam's reference by analogy to grand jury secrecy rules also misfires. Federal Rule of Criminal Procedure 6(e)(2) provides that grand jury secrecy rules only apply to government

2

<u>Sections 2518(9) and (10) Do Not Require Ruling on Admissibility Prior to Disclosure</u>

Rajaratnam's claim that §§ 2518(9) and (10) require notice and an opportunity to adjudicate a motion to suppress before any disclosure (R.L.B. at 2) also is incorrect. Section 2518(9) merely provides that the contents of any Title III interception shall not be "received in evidence or otherwise disclosed in any trial" unless each party has been furnished with a copy of the relevant applications and orders at least ten days prior thereto. Section 2518(10) merely provides that any aggrieved party may move to suppress Title IIII material before a trial, hearing or proceeding. Neither subsection prohibits, or places any limitations on, the disclosure of Title III material to a litigant in discovery prior to a trial.

<u>Rajaratnam's Claim That Disclosure is Permitted Only After Criminal Trial is Incorrect</u>

Rajaratnam devotes a large portion of his letter to addressing the USAO's position that it is entitled to disclose the Title III materials to the Commission pursuant to § 2517(2) as "such use is appropriate to the proper performance of his official duties." Because the Commission expects the USAO to respond to these arguments in its letter, and because this argument is not directly relevant to the grounds on which the Commission is asking this Court to rule, it will avoid duplication of arguments. However, it is important to note that Rajaratnam is incorrect in claiming that the cases cited by the government "each involved the use of the wiretap information . . . (ii) *after* the criminal proceeding concluded..." (R.L.B. at 3). In fact, in three of the four cases, Title III disclosures were made <u>before</u> the criminal trial or plea and before the information was made public. See <u>United States v. Fleming</u>, 547 F.2d 872, 873 (5th Cir. 1977); <u>Griffin v. United States</u>, 588 F.2d 521, 525 (5th Cir. 1979). Finally, in <u>Spatafore v. United States</u>, 752 F.2d 415 (9th Cir. 1985), the Title III tapes were transferred by the FBI to the IRS special agent in July 1974 who in turn transmitted them to a IRS revenue agent; defendants were not indicted until November 1974. Thus, nothing in Title III or controlling case law dictates that disclosure of Title III material may occur only *after* a ruling on its lawfulness or only *after* the criminal proceeding has concluded.[3]

Rajaratnam also misstates the Second Circuit's explanation in <u>NBC v. DOJ</u>, 735 F.2d 51 (2d Cir. 1984) ("NBC"), that the cases relied upon by the USAO arose before the DOJ had focused on the problem of disclosures in "civil litigation." (R.L.B. at 5). The <u>NBC</u> Court did not use the phrase "civil litigation" but rather the more narrow phrase "private litigation" and stated that the government was following a policy of non-disclosure in "private litigation save perhaps in private civil RICO suits *or in other situations where release would be compatible with the purposes of Title III.*" <u>NBC</u>, 735 F.2d at 54-55 (emphasis added). Here, the government is a party and release to the Commission "would be compatible with the purposes of Title III."

---

personnel, grand jurors and those necessary to the proceedings such as court reporters and interpreters; they do not prohibit defendants or witnesses in possession of grand jury material from making disclosures. Similarly, while Title III contains certain specific limitations on law enforcement's right to use and disclose Title III material, it contains no such limitation on a private party's disclosure of such information except for purposes of obstruction.

[3] Significantly, the Commission also is not aware of any authority that subsequent disclosure of Title III material is limited to only those specific portions that were previously disclosed.

3

Importantly, the Second Circuit recognized in NBC: "the government is in a position to make a judgment whether disclosure of the intercepted evidence will or will not be in accordance with the overall public interest, while a private litigant is not." NBC, 735 F.2d at 54. Thus, the Court emphasized DOJ's right to make the type of disclosure decision that the USAO has made here.[4]

### Substantial Portions of the Requested Title III Material Are Already Public

Any privacy interests defendants would otherwise have in the Title III materials are entitled to much less weight where there has already been a substantial public disclosure in criminal charging documents of key intercepted conversations by defendants going to the very heart of the charges in the Commission's civil case. For example, the criminal charging documents filed against Rajaratnam, Rajiv Goel and Anil Kumar and Chiesi, Mark Kurland and Robert Moffat contain detailed excerpts of numerous intercepted communications among these defendants concerning insider trading schemes. See, e.g., Rajaratnam Complaint ¶ 53(a)-(e), (h) (Rajaratnam, Goel and others discussing Clearwire); ¶ 56(c),(f), (g) and (j) (Rajaratnam and Chiesi discussing Akamai); ¶ 59(b-g), (j-m), (o-s) (Rajaratnam, Kumar and Chiesi discussing AMD); ¶ 61 (e), (g), (j) (Rajaratnam, another Galleon employee and Goel discussing PeopleSupport); see Chiesi Complaint ¶ 23(d), (i), (j), 24(b-d) (Chiesi, Rajaratnam, Moffat, Kurland and an Akamai executive discussing Akamai securities); ¶ 28(b-e), (g-r), (u-z), (aa -cc) (Chiesi, Rajaratnam, Kurland and Moffat and others discussing AMD); ¶ 30(a, b and e) (Chiesi, Kurland, Moffat and Rajaratnam discussing IBM); ¶ 31(d)-(e) (Chiesi and CW-1 discussing Sun). Summaries and excerpts of intercepted communications also appear in the Complaints in U.S. v. Goffer, et al., 09 Mag. 2438 (Nov. 4, 2009) and U.S. v. Hariri, 09 Mag. 2436 (Nov. 4, 2009). These intercepted conversations have received widespread publication in the national and international media.

### There Are Compelling Public Policy Reasons for Disclosure of the Title III Materials

Given the recent financial catastrophe that has befallen this country, it is hard to conceive of a more compelling public policy reason supporting disclosure of these Title III materials than to assist the Commission in enforcing the nation's securities laws and protecting the integrity of its markets. The civil and related criminal complaints contain serious charges of insider trading concerning stocks of well-known public companies and involving millions of dollars of fraud. The public interest dictates that both the government and defendants receive a fair trial in the criminal and the civil cases. The government will not receive a fair trial in either the civil or the criminal cases if defendants are permitted the unfair advantage of sole access to substantial, crucial evidence in the civil case.

The representations of defense counsel that they will not "use" the Title III evidence in the civil case does not cure this unfairness. Even assuming that they are bound by this representation against introducing any Title III materials at trial, they can not reasonably represent that they will not use Title III materials to assist them in this case. Counsel for Rajaratnam and Chiesi have acknowledged that they have begun to review the Title III material.

---

[4] Regarding the Office of Legal Counsel's guidance, it addresses disclosure of non-public Title III material to the Intelligence community, a question with no bearing on the government's right to disclose already public wiretap information to a federal agency in a related civil enforcement action.

4

They can not blind themselves to knowledge gleaned from these tapes in their preparation for trial. They will necessarily make use of the Title III materials in advising their clients whether to testify at a civil trial and, if their clients do testify, they will need to be familiar with the tapes in order to refresh defendants' recollection and to avoid offering incorrect, inconsistent or perjurious testimony. Even if defendants choose not to testify, counsel will still use the information gleaned from the Title III materials to prepare to cross-examine government witnesses at depositions and at trial, obtain relevant discovery, decide what questions to ask and what questions not to ask Commission witnesses, attack the credibility of witnesses and fashion their defense. Defense counsel will also be able to disclose Title III material to potential witnesses they will call to refresh their recollection and help them fashion their testimony.

In addition, certain witnesses may be reluctant to testify about conversations that took place several years ago, and run the risk of offering incorrect or inconsistent testimony, where defendants, and their counsel, but not the witness, possess firsthand evidence of those conversations and can use them to confuse or set traps for the witness. Obviously, defense counsel do not have to offer the Title III tapes into evidence, or even reference the tape recordings, when using them to cross-examine such witnesses and it would be impossible for the Court to police any claim that the tapes would not be so used.

Finally, some potential witnesses are already in possession of, or have been given access to, Title III material. This puts the Commission in the untenable position of flying blind, not knowing, and not being able to discuss, even with its own witnesses, information vital to their testimony and on which they can be cross-examined by defense counsel. Such a bizarre situation is inconsistent with the letter and spirit of the civil discovery rules. Such a scenario not only prejudices the Commission, but it has the potential to prejudice the government's criminal case. Important government witnesses will be deprived of the opportunity to refresh their recollection and will run the unnecessary risk of innocently offering testimony that may be inconsistent with the testimony they will offer in the criminal case after their recollection is refreshed by review of the Title III materials in conjunction with the USAO's preparation for the criminal trial. Defense counsel should not be able to use the Title III material in the civil trial to set traps for government witnesses in the criminal trial.[5]

In summary, any privacy interests defendants would otherwise have in the Title III materials are greatly diminished in the instant case where the materials have already been disclosed in public charging documents and given widespread publication in the national news media. Furthermore, these greatly reduced privacy interest are far outweighed by the public policy reasons supporting the disclosure of these materials to the Commission to enforce important public interests.

---

[5] Even assuming that defendants were to concede that the U.S. Attorney's Office could use the Title III materials to prepare Commission witnesses for the civil case, that would still create the untenable situation where every party but the Commission has access to the tapes, typically the best evidence.

5

Respectfully submitted,

*Valerie A. Szczepanik*
Senior Trial Counsel

cc: All defense counsel (by email)
Jonathan Streeter, AUSA (by email)
Reed Brodsky, AUSA (by email)
Andrew Michaelson, SAUSA (by email)