LAW OFFICES
# DAVID WIKSTROM
26 BROADWAY - 19TH FLOOR
NEW YORK, NY 10004

E-MAIL: DAVIDWIKSTROM@AOL.COM

TELEPHONE: (212) 248-5511
FACSIMILE: (212) 248-2866

February 5, 2010

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

> Re: <u>Securities and Exchange Commission v. Roomy Khan, *et al.*</u>
> 09 CV 08811 (JSR)

Dear Judge Rakoff:

By this letter, Defendant Roomy Khan moves for a protective order pursuant to Rule 26(c) barring defendant Raj Rajaratnam from seeking certain materials and documents from Ms. Khan, from Plaintiff SEC, and from third parties, as more fully set forth below, on the ground that the material requests are neither relevant to the issues in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence. In particular, Ms. Khan objects to (1) Mr. Rajaratnam's request that the SEC supply him with six complete forensic images of Ms. Khan's computers (Rajaratnam Request #1 of First Request For the Production of Documents); (2) Mr. Rajaratnam's third party subpoena served upon First Republic Bank, which originated the mortgage loan for Ms. Khan's home in California in approximately 2000; and (3) certain document requests made of Ms. Khan personally, in particular Requests numbered 20-25. I certify under Rule 26(c)(1) that counsel have conferred in good faith in an effort to resolve the issue without court action.

It is ironic, to say the least, that Defendant Rajaratnam, concerned as he is with civil discovery requests unleashing a "feeding frenzy of parasitic civil litigation against criminal defendants by . . . private parties," (*See* Rajaratnam Letter to the Court of 1/22/10, p. 4), now seeks, without any limitation, "all documents or tangible things from January 1, 1998 to the present concerning Roomy Khan, including but not limited to . . . copies and/or images of computers or electronic files, computers and/or computer hard drives . . . " (Rajaratnam Request No. 1). The discovery process for Mr. Rajaratnam is a decidedly one-way street: having himself produced no personal discovery whatsoever as of today's date, and having in addition objected to the SEC's largely identical document requests on the grounds of

overbreadth, vagueness, ambiguity, burdensomeness and the like, he nevertheless insists that he be provided in Ms. Khan's case with every file, every email, every photograph, every paid bill, every day's browsing history—for the period of the last 12 years—retained or otherwise evidenced on Ms. Khan's computers. He also seeks copies of Ms. Khan's mortgage documents from the purchase of her home in California 10 years ago via subpoena served upon First Republic Bank. From Ms. Khan personally, he requests "documents concerning any legal matter involving you," (Request #20), "all documents concerning your appointments and schedules (#21), "all federal and state tax returns" (#22), "documents sufficient to show your financial assets and liabilities" (#23), "documents sufficient to show your employment history since January 1, 1990" (#24), and "all documents concerning any tax liability for which you were delinquent in payment" (#25).

We believe that these requests plainly go beyond requests for matter that is relevant to any party's claim or defense, or otherwise relevant to the subject matter of the litigation; moreover, they are not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, a protective order is warranted.

### Ms. Khan's Computers

The SEC is in possession of the forensic image files of five computers belonging to Ms. Khan. One of those computers was imaged twice, at two different times; accordingly the Commission has six raw forensic imaged files. These files comprise 1.5 terabytes of information (or 1,500 gigabytes), consisting of data both personal and business in nature. The computers include all of Ms. Khan's emails, contacts, photographs, account passwords, family addresses, medical information, account information, paid bills and the like, and obviously contain her browsing history going back as far as 2002, several years prior to the relevant time period concerning the allegations in the complaint. Furthermore, Ms. Khan was not the only user of these computers: her daughter also used them.

Clearly then, the images of the hard drives contain an abundance of data and information that is neither relevant, nor likely to be admissible, at trial, and is thus beyond the reach of authorized discovery under Rule 26. The SEC has performed a comprehensive keyword search of the hard drives[1] in order to identify documents or computer files of

---

[1] The search terms were: Polycom, PLCM, Kronos, KRON, Hilton, HLT, Google, GOOG, Galleon, Rajaratnam, "Raj Rajaratnam", Raj and Rajaratnam, galleongrp, galleon, "Sunil Bhalla", Sunil and Bhalla, Sunil, Bhalla, Sbhalla, "Shammara Hussain", Shammara and Hussain, Shammara, Hussain, shammara, hussain, shammarh, shamz11, "Rafiq Hussain", Rafiq and Hussain, Rafiq, "Deep Shah", Deep and Shah, Shah, Lanexa, "Tom Hardin", Tom and Hardin, thardin, lanexaglobal, "Gilroy D'Souza", Gilroy and D'Souza, Gilroy, D'Souza, "Karan Malik", Karan and

conceivable relevance to the action (and has already produced the emails resulting from that search) but Mr. Rajaratnam wishes not to rely on the SEC's keyword terms as a mechanism for delimiting the scope of the search—indeed, he declined the SEC's invitation to participate in the search process and assist in the formulation of keywords for searching—and now seeks full copies of the forensic images to rummage around in himself.

Permitting such a review would invade the privacy interests of Ms. Khan and others, and should not be approved. The best—and indeed the only practical—mechanism for winnowing relevant documents from large electronic repositories, and the mechanism that accomplishes those ends while both preventing production of irrelevant material and protecting the privacy rights of the "searched" party, is by keyword searching. *William A. Gross Construction Associates, Inc. v. American Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134 (S.D.N.Y. 2009)(Peck, J.)("This Opinion should serve as a wake-up call to the Bar in this District about the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or "keywords" to be used to produce emails or other electronically stored information ('ESI')." *See also, Capitol Records, Inc. v. MP3Tunes LLC*, 261 F.R.D. 44, 2009 WL 2568431 (S.D.N.Y. 2009). Mr. Rajaratnam's stance, of declining to participate in the keyword-searching process and insisting instead on wholesale receipt of everything—both relevant and irrelevant—should be rejected.

### The Mortgage File and Ms. Khan's Personal Documents

First Republic's file relating to a mortgage loan made in 2000 for the purchase of Ms. Khan's California home has nothing whatever to do with the subject matter of this case, which relates to allegations of insider trading occurring between Ms. Khan and Mr. Rajaratnam and others during 2006 and 2007, as detailed at ¶¶ 44 – 86 of the Second Amended Complaint. Similarly, civil discovery conducted into Ms. Khan's personal legal matters, her tax returns,[2] her financial statements, her employment history, her appointment

---

Malik, Karan, Malik, "Rohit Malik", Rohit and Malik, Rohit, "Jeff Turnbaugh", Jeff and Turnbaugh, Turnbaugh, jturnbaugh, "Jay Casey", Jay and Casey, "CB Lee", Choo and Beng, Choo and Lee, Beng and Lee, Choo, cblee, saccapital, "Ali Far", Ali and Far, afar, CLWR, Clearwire, Akamai, AKAM, PeopleSupport, PSPT, Sprint, "Rajiv Goel", Rajiv and Goel, Rajiv, Goel, "Anil Kumar", Anil and Kumar, Anil, Kumar, Moody's, Blackstone, "Market Street", Market and Street, Intel, INTC, "Advanced Micro Devices", Advanced and Micro and Devices, AMD, Hardin, and DSouza.

[2] Tax returns qualify as protected matter, and courts are "reluctant to require disclosure of tax returns because of both 'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.'" *Rahman v. Smith & Wollensky Rest. Group, Inc.*, 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007) (quoting *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y.1979)). The standard for ordering disclosure

books and her tax delinquencies is both irrelevant and unlikely to lead to admissible evidence. We therefore ask the Court to enter a protective order, disallowing these requests.

Based on prior conversations with counsel, I expect Mr. Rajaratnam to argue in part that wide-ranging discovery of Ms. Khan should be allowed into matters potentially reflecting upon her credibility, in order to prepare for impeaching her in the related criminal trial, and in this case, should she be called to testify against him. But this theory proves vastly too much: as the Court put it in *Burns v. Phillips*, 50 F.R.D. 187 (N.D.Ga.1970), "[i]f usefulness for purposes of impeachment were accepted as the criterion of relevancy, the relevancy test would for all practical purposes be worthless." *Id.* at 188.

In general, the courts limit discovery for purposes of impeachment in the same way that other discovery is constrained: by determining whether it is reasonably likely to lead to admissible evidence. In the context of discovery for impeachment purposes, this means deciding whether disclosure may reveal information affecting the credence afforded to a witness' trial testimony, relying upon five primary factors for analyzing whether a course of discovery meets this test. (These factors were discussed at length in Judge Eaton's thoughtful opinion in *Davidson Pipe Co. v. Laventhol and Horwath*, 120 F.R.D. 455 (S.D.N.Y. 1988), which, despite its age, is the most frequently cited case on this issue.)

First, the acts or materials in question must demonstrate a propensity for deception; second the court must consider the extent to which the prior act, even if deceptive, occurred in a context where there is a premium on veracity; third, the court must consider the temporal proximity between the matter inquired of and the subject matter of the litigation; fourth, the factual relatedness between the material inquired of and subject matter, and as the connection becomes more attenuated, so does the probative value of the evidence; and finally the court must decide whether the party seeking disclosure has a foundation for its inquiry. This consideration is not concerned with the admissibility of the evidence sought; rather, it involves the question of whether there is a reasonable likelihood that any pertinent evidence will be elicited. The law does not permit a party seeking disclosure to embark on an examination of every statement ever made by a witness in the hope of unearthing a falsehood. *See In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y.1971). To justify an inquiry into facts relevant solely to credibility, the party seeking discovery must therefore have a factual basis for believing that prior acts of deception will be revealed.

---

is two-part: the moving party must demonstrate that 1) the returns are relevant to the subject matter of the action and 2) a compelling need for the information. *Id.* (*citing Hazeldine v. Beverage Media, Ltd.*, 1997 WL 362229, at *4 (S.D.N.Y. June 27, 1997)). Here, Mr. Rajaratnam satisfies neither requirement.

    Here, given the breadth of his requests and his unwillingness to accede to any reasonable limitations, it is fairly inferable that Mr. Rajaratnam is seeking license to conduct a fishing expedition into Ms. Khan's computers and documents reflecting other aspects of her personal life, for the purpose of developing material to cross-examine her with at some later point. This effort should be rejected, and the Court should issue a protective order forbidding the inquiries.

Respectfully submitted,

David Wikstrom
Attorney for Roomy Khan


cc: William White, Esq.
    Attorney for Raj Rajaratnam

    Valerie Szczepanik, Esq.
    Attorney for Securities and Exchange Commission