

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
3 WORLD FINANCIAL CENTER
ROOM 400
NEW YORK, NEW YORK 10281-1022

April 7, 2010

<u>Via Facsimile</u>

The Honorable Jed S. Rakoff
United States District Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:   *SEC v. Galleon Management, LP et al.; 09 Civ. 8811 (JSR)*

Dear Judge Rakoff:

    Further to Plaintiff's letter dated March 29, 2010, and in accordance with the Court's Order dated April 5, 2010 ("Order"), Plaintiff Securities and Exchange Commission and Defendant Schottenfeld Group LLC ("Schottenfeld Group"), hereby submit a joint statement setting forth the information specified in the Order. This statement is submitted in support of a Consent and Proposed Final Judgment as to defendant Schottenfeld Group, in which Schottenfeld Group agrees to the entry of an order: (1) permanently enjoining it from violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder; (2) ordering it to pay disgorgement in the amount of $460,475.28, plus prejudgment interest thereon in the amount of $72,202.72; and (3) ordering it to pay a civil penalty in the amount of $230,237.64 pursuant to Section 21(d)(3) and Section 21A of the Exchange Act, and Section 20(d) of the Securities Act.

    A.   *Disgorgement*

    The Court has requested "the details of how the disgorgement figure was calculated, including the particulars of the violations involved and how the related trading profits or losses were arrived at[.]" (Order at 2.) The parties to the proposed settlement agree that the disgorgement figure represents Schottenfeld Group's share of trading profits realized as a result of securities law violations alleged in the Second Amended Complaint ("Complaint"), more specifically, alleged insider trading by three individuals – Gautham Shankar, Zvi Goffer, and David Plate – who, at the time of the trading, were registered representatives and proprietary traders at Schottenfeld Group, a New York limited liability company and a registered broker-dealer based in New York, New York. The alleged insider trading concerns three issuers – Google, Inc. ("Google"), Hilton Hotels Corp. ("Hilton"), and Kronos Inc. ("Kronos") – and the settlement seeks disgorgement of Schottenfeld Group's share of alleged insider trading proceeds

The Honorable Jed S. Rakoff
4/7/2010
Page 2

generated by Google, Hilton, and Kronos trades in Schottenfeld Group accounts managed by Shankar, Goffer, and Plate.

(i) Google

The Commission's Complaint alleges that Shankar received material, non-public information concerning Google's negative quarterly earnings results in advance of its July 19, 2007 earnings announcement. The Complaint alleges that, based on the information, Shankar sold short 2,000 Google shares and purchased 5 Google put option contracts in Schottenfeld Group accounts he managed. As a result of Shankar's alleged insider trading in Google, the Schottenfeld Group accounts Shankar managed profited by more than $50,000. (*See* Compl. ¶ 78.)

(ii) Hilton

The Blackstone Group's purchase of Hilton was announced on July 3, 2007. The Commission's Complaint alleges that Shankar received material, non-public information concerning the Hilton transaction and traded on that information, buying approximately 25,000 Hilton shares in multiple accounts, including a Schottenfeld Group account he managed. Shankar's alleged insider trading of Hilton in the Schottenfeld Group account he managed generated profits of more than $156,000. (*See* Compl. ¶ 65.) According to the Complaint, Shankar also passed the Hilton tip on to Goffer, who then purchased 5,000 Hilton shares and 510 call option contracts in a Schottenfeld Group account he managed, generating profits of approximately $329,000. (*See* Compl. ¶ 66.)

(iii) Kronos

On March 23, 2007, it was announced that the software company Kronos would be taken private by the private equity firm Hellman & Friedman. The Commission's Complaint alleges that Shankar received material, non-public information concerning the Kronos transaction, and traded on the basis of that information, purchasing 7,500 Kronos shares in a Schottenfeld Group account he managed, and generating profits of over $78,000. (*See* Compl. ¶¶ 87-88.) According to the Complaint, Shankar, in turn, passed the tip to Goffer and Plate, who traded on the basis of the Kronos information in Schottenfeld Group accounts they managed, reaping profits of approximately $290,000. (*See* Compl. ¶¶ 89-91.)

The Honorable Jed S. Rakoff
4/7/2010
Page 3

        (iv) Profits to Schottenfeld Group

The proposed settlement charges Schottenfeld Group with its share of the profits generated as a result of the alleged insider trading described above. Schottenfeld Group took 50% of the trading profits in the accounts managed by these traders, while the traders each kept the remaining 50%. As reflected in the proposed settlement, disgorgement and prejudgment interest against Schottenfeld Group were calculated as shown in the table below:

|  | Google | Hilton | Kronos | TOTALS |
|---|---|---|---|---|
| Alleged insider trading profits in Schottenfeld Group accounts managed by Shankar, Goffer, and Plate | $50,399.35 | $485,703.87 | $384,847.33 | $920,950.55 |
| Schottenfeld Group's share of profits (50%) | $25,199.68 | $242,851.94 | $192,423.67 | $460,475.28 |
| Prejudgment interest[1] | $3,638.52 | $35,691.85 | $32,872.35 | $72,202.72 |
| Schottenfeld Group's profits plus prejudgment interest | $28,838.20 | $278,543.79 | $225,296.02 | $532,578.00 |

    In addition to disgorgement, the proposed settlement assesses a civil penalty on defendant Schottenfeld Group, representing fifty percent of the disgorgement amount, $230,237.64, a discount from a one-time penalty, in exchange for its agreement to cooperate with the Commission.

    B.     *Recommendations for Enhanced Compliance*

The Court's Order requests "the specifics of the recommendations for enhanced compliance made to Schottenfeld by its outside counsel and the manner in which Schottenfeld proposes to implement those recommendations[.]" Based on recommendations made by its outside counsel, Schottenfeld Group has determined to take the following steps with respect to compliance:

        (i) Written Procedures: Certain portions of the firm's compliance manuals will be revised and existing stand-alone compliance memoranda will be consolidated into the primary manuals.

        (ii) Training: In addition to existing training, the following steps will be taken:

            (a) Proprietary traders will be required to attend a comprehensive training session on an annual basis that will cover topics such as insider trading, market manipulation and other relevant regulatory developments. This

---

[1] The prejudgment interest figure represents prejudgment interest on the disgorgement amount at the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

3

The Honorable Jed S. Rakoff
4/7/2010
Page 4

training will be video taped and new hires will be required to view the video as part of a mandatory orientation process.

(b) Mandatory firm-wide compliance meetings will be held bi-annually (as opposed to annually, which is the current practice).

(iii) Surveillance: In addition to the daily reviews of electronic communications and trading data that the Compliance Staff ("Compliance") already conducts, the following new surveillance procedures will be adopted:

(a) Event Driven Reviews: Upon becoming aware that any proprietary traders hold a position in a company that is the subject of a merger announcement, significant earnings release or other major news event, Compliance will perform a review of the circumstances surrounding the trades. The review will include interviews of the traders with the positions in question.

Compliance will be made aware of these situations in a number of ways including, but not limited to:

(i) through the transaction reviews that already occur on a daily basis;

(ii) by being informed by designated "floor captains" consisting of experienced traders who are responsible for being generally knowledgeable about positions that the firm's proprietary traders have taken and keeping track of major news events regarding such positions; and

(iii) through a mandatory requirement that will be imposed on each trader to self-report any situations to Compliance where they hold a position in a company that is the subject of a merger or acquisition announcement.

Compliance will record the extent and results of their investigation on a form that shall be retained by the firm. Compliance will also audit the forms on a quarterly basis to look for suspicious patterns that warrant further review.

(b) Concentration Report Review: Twice per day (intra-day and end of day), Compliance will review the firm's top three equity positions by shares, capital committed and Profit & Loss. To the extent that Compliance sees large groups of traders in the same position or individual traders that are overly concentrated in a particular position, Compliance will inquire about the traders' positions. Compliance will maintain a record of whatever inquiry is conducted. The facts and circumstances will dictate the scope of the review.

4

The Honorable Jed S. Rakoff
4/7/2010
Page 5

    (iv) Miscellaneous:

        (a) Background Checks on New Traders: In addition to the standard CRD and fingerprint check that is conducted to register new traders, the firm will retain a service to perform more extensive background checks on new traders.

        (b) Annual Review of Procedures: On an annual basis, Compliance and management will conduct a comprehensive review of the firm's procedures to determine if they are being implemented effectively and whether any changes are warranted.

Schottenfeld Group has endeavored to implement these recommendations and is in the final stages of doing so.

    C.    *Appointment of Independent Consultant*

The Court's Order requests information about "the timing and manner of the appointment of the independent consultant, including the selection criteria." Schottenfeld Group shall retain an independent consultant ("Independent Consultant") within one year from entry of the Final Judgment. The one-year period will allow Schottenfeld Group to implement fully the recommendations described above and to enhance Schottenfeld Group's controls and compliance mechanisms where necessary to ensure that they are reasonably effective to prevent the misuse of material non-public information. The Independent Consultant shall be selected based on the following criteria:

    (i) The Independent Consultant must have no prior business relationship with Schottenfeld Group or its principals;

    (ii) The Independent Consultant must have a reputation for integrity and appropriate experience in reviewing and drafting controls and compliance mechanisms that are reasonably effective to prevent the misuse of material non-public information;

    (iii) The Independent Consultant must be willing to sign an agreement barring the independent consultant or an affiliated firm from performing any other work for Schottenfeld Group for a period of two years after the engagement as Independent Consultant; and

    (iv) The Independent Consultant must be an acceptable selection in the judgment of the staff of the Securities and Exchange Commission.

5

The Honorable Jed S. Rakoff
4/7/2010
Page 6

      The Commission and Schottenfeld Group respectfully request that Your Honor enter the proposed judgment with respect to defendant Schottenfeld Group, which would resolve all issues in this action with respect to that defendant. The parties remain available for a conference should the Court have any further questions.

           Respectfully submitted,

           _____
           Valerie A. Szczepanik
           *Counsel for Plaintiff*
           *Securities and Exchange Commission*

           _____
           Kenneth Breen
           *Counsel for Defendant Schottenfeld Group LLC*