John M. Dowd (admitted *pro hac vice*)
Terence J. Lynam (admitted *pro hac vice*)
William E. White (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave, NW
Washington, DC 20036
(202)887-4000

Robert H. Hotz, Jr. (RH-4456)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212)872-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 09-CV-8811-JSR |
| | § | ECF CASE |
| GALLEON MANAGEMENT, LP, et al. | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANT RAJARATNAM'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL PRODUCTION OF RELEVANT, LEGALLY OBTAINED <u>WIRETAPPED COMMUNICATIONS</u>**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION.................................................................................................1

II. ARGUMENT.....................................................................................................4

    A.  Relevancy Determinations Need Not Be Made At This Time ...........................4

        1.  The Impending Criminal Trial Will Greatly Assist This Court's
            Review of the Wiretapped Communications ...........................................4

        2.  The SEC Would Suffer No Significant Prejudice ...................................6

    B.  The Privacy Interests at Stake Continue to Outweigh the SEC's Right
        of Access ...............................................................................................7

    C.  The SEC Request for Wiretapped Communications is Overbroad and
        Seeks Irrelevant Materials to Which it is Not Entitled...................................10

    D.  The SEC is Not Entitled to apply a Double-Standard Regarding the
        Scope of Discovery ................................................................................13

III. CONCLUSION .................................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Fleming v. United States,*
    547 F.2d 872, 875 (5th Cir. 1977)…....……………………………………...…..14

*Griffin v. United States,*
    588 F.2d 521, 526 (5th Cir. 1979)…....……………………………….…...14

*Guan Ming Lin v. Benihana Nat'l Corp.,*
    No. 10 Civ 1335, 2010 WL 4007282 *3(S.D.N.Y. Oct. 5, 2010)…….…………….....13

*In re IBM Corp. Sec. Litig.,*
    163 F.3d 102, 111 (2d Cir. 1998)……………………………………………...16

*In re New York Times,*
    828 F.2d 110, 116 (2d Cir. 1987)………………………………………………7, 8, 9

*Resolution Trust Corp. v. Grant Thornton,*
    41 F.3d 1539, 1548 (D.C. Cir. 1994)……………………………….…….…...15

*Seattle Times Co. v. Rhinehart,*
    467 U.S. 20, 35 (1984)…………………………………………..……..9

*SEC v. Dorozhko,*
    606 F. Supp.2d 321, 327 (S.D.N.Y. 2008)……………………………………………15

*SEC v. Management Dynamics, Inc.,*
    515 F.2d 801, 808 (2d Cir. 1975)…………………………………………..15

*SEC v. Rajaratnam,*
    622 F.3d 159, 181, 182, 184, 185, 186, 187 (2d Cir. 2010) ………….……….....passim

*Segan v. Dreyfus Corp.,*
    513 F.2d 695, 696 (2d Cir. 1975)…………………………………………13, 16

*Spatafore v. United States,*
    752 F.2d 415, 416-17 (9th Cir. 1985)……………………………………...…..14

*United States v. Procter & Gamble,*
    356 U.S. 677, 681 (1958)……………………………………………...16

*United States v. Rural Elec. Convenience Cooperative Co.,*
    922 F.2d 429. 440 (7th Cir. 1991)………………………………………..15

*Weinstein v. Erenhaus*,
    119 F.R.D. 355, 357 (S.D.N.Y. 1988)……………………………………………………11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1)……………………………………………………………………..13

## I.   <u>INTRODUCTION</u>

Defendant Raj Rajaratnam respectfully submits this opposition to the Securities and Exchange Commission's renewed motion to compel production of wiretapped communications. Mr. Rajaratnam's criminal trial is scheduled to commence on February 28, 2011 – only five weeks after the hearing date of this motion.[1]  The trial is expected to last at least two months.  In the criminal case, the Government has accused Mr. Rajaratnam of insider trading or conspiracy to commit insider trading in 33 stocks.  During the course of the criminal trial, Mr. Rajaratnam anticipates that the Government will seek to utilize a substantial number of wiretapped communications relevant to this civil case as part of its case in chief.  Moreover, Mr. Rajaratnam may also seek to utilize relevant wiretapped communications during cross examination in the Government's case or otherwise.

Thus, the relevance and context of many (if not most) of the intercepted communications at issue in the SEC civil case will be litigated and tested before Judge Holwell in the criminal case in a matter of weeks.  As a result, Mr. Rajaratnam reiterates his request that the wiretapped communications not be produced until the criminal case has concluded.

Such an adjournment or stay was contemplated by the Second Circuit in its decision granting Mr. Rajaratnam's request for mandamus relief.  The Second Circuit stated:

---

[1] On November 24, 2010, the Honorable Richard J. Holwell granted Mr. Rajaratnam's motion to sever the criminal cases of Mr. Rajaratnam and Defendant Danielle Chiesi.  By order dated December 9, 2010, Judge Holwell set the Rajaratnam criminal trial to commence on February 28, 2011 followed immediately by the Chiesi criminal trial which will commence on April 25, 2011.

> Were the civil trial adjourned, the most relevant wiretapped communications . . . might well be publicly disclosed at the criminal trial, and the SEC would then be able to use these materials in a civil proceeding without implicating any weighty privacy rights.  Such an adjournment would have the added benefit of making the district court's job of balancing any relevant interests significantly easier.

*SEC v. Rajaratnam*, 622 F.3d 159, 186 (2d Cir. 2010).

The relief envisioned by the Second Circuit is appropriate here.  First and foremost, the relevance and privacy questions at issue in the SEC's renewed motion (and discussed below) will be more fully developed shortly in the criminal case.  As a result, and as suggested by the Second Circuit, this Court's task in weighing privacy interests and considering relevancy will be made substantially easier with this full record (including sworn testimony from many of the participants in those communications) once that record has been developed in the criminal case.

Second, the SEC will suffer no significant prejudice in waiting until Mr. Rajaratnam's criminal trial since it will commence in five weeks.  The SEC will gain access to the wiretapped materials as they are admitted into evidence and placed on the public record (obviating the need for any determination by this Court).  Mr. Rajaratnam will also undertake to produce relevant but non-admitted wiretapped communications to the SEC no later the conclusion of the criminal trial without the need for judicial intervention. [2]  Moreover, to the extent that there remains a dispute as to whether certain communications should be produced, this Court will have the benefit of a fully developed record in the criminal case in order to reach its relevance and privacy determinations.  Finally, only five of the ten stocks charged in the SEC's Second Amended

---

[2] The parties dispute which communications are relevant to this action.  As set forth below, Mr. Rajaratnam believes that the SEC's formulation of relevance is overbroad, contradicts their representations to the Second Circuit, and contradicts their conduct in this case.  Mr. Rajaratnam maintains that wiretapped communications are relevant if they concern the stocks charged by the SEC in its Amended Complaint.  Those intercepted communications total approximately 240 conversations.

Complaint have relevant wiretapped communications.  The conversations related to those stocks number approximately 240.  The SEC will have ample time to review those conversations during the course of, and at the conclusion of, the criminal trial.

Under these circumstances, the Court should refrain from ordering the production of relevant wiretapped communications until the conclusion of the criminal trial.

To the extent that the Court reaches the merits of the SEC's motion, the privacy interests involved continue to outweigh whatever right of access the SEC might have.  Contrary to the SEC's position, Judge Holwell's denial of Mr. Rajaratnam's motion to suppress does not eliminate the privacy concerns that permeate the Second Circuit's opinion in this matter.  As that court recognized, Mr. Rajaratnam continues to have a privacy interest in the intercepted communications, particularly here, where they are not yet and may never be part of the public record.  Also at stake are the privacy interests of innocent third parties who are not before the Court, as well as Mr. Rajaratnam's constitutional right to a fair trial in the criminal case.  The Second Circuit has repeatedly instructed that district courts must be vigilant in protecting these rights.

Moreover, the SEC's definition of relevant is severely overbroad.  The SEC's seven-category request of "relevant" information is really a thinly disguised request for virtually all of the intercepted communications.  Such a request far exceeds what is permissible even under the basic rules of discovery, let alone a request for wiretapped communications, which requires that the Court conduct a balancing of the interests at stake.  The SEC ignores this fact, and also ignores that Judge Holwell's denial of Mr. Rajaratnam's motion to suppress addressed *only* the arguments regarding suppression, and made no relevancy determinations as to any of the intercepted communications.  There is nothing alleged in this case that has not also been alleged

in the criminal case.  Thus, the SEC has no legitimate claim to broader discovery than that which is received into evidence in the criminal case, particularly here, where its request seeks irrelevant communications and unnecessarily implicates privacy interests that outweigh any purported right to the communications.  The request also contradicts the SEC's own representation to the Second Circuit regarding what it deems relevant and the position that it has previously taken on issues of relevance pertaining to the discovery requests of other parties.  The SEC's request is nothing other than investigation disguised as discovery, despite Your Honor's recognition at the very first status conference in this case that the time for investigation was over, and that the SEC brought a lawsuit because it was prepared to go forward.  It is now obvious that the SEC's assurance at that time that it was prepared to go forward was an empty assurance, but that is a basis for denying its request, not granting it.

For these reasons, the SEC's motion should be denied at least until the conclusion of the criminal trial.

## II.   ARGUMENT

### A.   Relevancy Determinations Need Not Be Made At This Time

#### 1.   The Impending Criminal Trial Will Greatly Assist This Court's Review of the Wiretapped Communications

The SEC's motion and its request for immediate production of the wiretapped communications place the Court in a difficult position.  In its opinion, the Second Circuit charged the Court with determining which wiretapped communications are relevant to this lawsuit and balancing competing privacy interests.  *Rajaratnam*, 622 F.3d at 184.  Yet absent factual discovery or a comprehensive review of the thousands of wiretapped communications, the Court is left largely to rely on the parties' papers to reach its conclusions.  If this civil case were being conducted alone and in isolation, the Court may have to follow such a path.

4

But in its opinion, the Second Circuit offered an alternative:

> Were the civil trial adjourned, the most relevant wiretapped communications . . . might well be publicly disclosed at the criminal trial, and the SEC would then be able to use these materials in a civil proceeding without implicating any weighty privacy rights.  Such an adjournment would have the added benefit of making the district court's job of balancing any relevant interests significantly easier.

*Rajaratnam*, 622 F.3d at 186.

Mr. Rajaratnam's criminal trial is set to commence on February 28, 2011, just five weeks from the date of the hearing on this motion.  As set forth above, in the criminal case, the Government has charged Mr. Rajaratnam with insider trading or conspiracy to commit insider trading in 33 stocks.  By contrast, the SEC's Amended Complaint charged Mr. Rajaratnam with insider trading in ten stocks, only five of which have wiretapped communications.  Each of the five stocks charged in this case that have relevant wiretapped communications are also charged in the criminal case.  In other words, there is a complete overlap between the stocks charged in this case that have wiretapped communications and the criminal case.

Mr. Rajaratnam anticipates that the Government will seek to utilize the relevant wiretapped communications related to those five stocks in its case in chief.  Mr. Rajaratnam may also utilize relevant wiretapped communications related to those five stocks as part of his cross examination of witnesses in the Government's case or otherwise.

The process of those conversations being offered into evidence will directly impact the determinations that this Court is required to make in a number of ways.  First, to the extent that wiretapped communications are admitted into evidence and placed on the public record, the conversations would be available to the SEC without the need for any judicial determination.  Second, to the extent that relevant wiretapped communications are not placed into evidence, Mr. Rajaratnam undertakes to produce those to the SEC no later than the conclusion of the criminal

trial.  Mr. Rajaratnam believes that these two actions will likely result in the production of all of the relevant wiretapped communications to the SEC.  To the extent that there remains a dispute over certain specific conversations, this Court will then have the advantage of the context and factual discovery that will occur on the record in the criminal case.  Many of the participants in these calls will testify at the criminal trial and the Court will be in a better position to reach determinations of relevance and privacy with this information in hand.

This approach would preserve judicial resources, the defendants' resources, and the public resources that the SEC is expending in its premature attempt to obtain the intercepted communications.

## 2.  The SEC Would Suffer No Significant Prejudice

Mr. Rajaratnam's criminal trial will commence in just five weeks from the date of the hearing on this motion.  The SEC simply will not suffer significant prejudice in waiting until the criminal trial for the wiretapped communications.  There is little doubt that the SEC will be closely following the criminal trial.  As wiretapped conversations are admitted into evidence and placed on the public record, they will be available to the SEC.  The SEC would then have those communications before the conclusion of the criminal trial, indeed in many cases before the conclusion of the Government's case.  Additionally, Mr. Rajaratnam will undertake to produce the remaining relevant wiretapped communications to the SEC no later than the conclusion of the criminal case.  The number of relevant wiretapped communications is not voluminous, totaling approximately 240 conversations.[3]  The SEC will suffer no prejudice in receiving the bulk of

---

[3] The two wiretaps relevant to the allegations made in the SEC's Second Amended Complaint are the wiretaps placed on Mr. Rajaratnam's cellular phone from March 10, 2008 through December 6, 2008 and telephone lines belonging to Danielle Chiesi, which were intercepted between August 14, 2008 and October 11, 2008.  While a total of 6,479 telephone conversations were intercepted by these wiretaps, approximately 240 intercepted

these communications during the criminal trial and the remainder no later than the end of the criminal trial.

**B. The Privacy Interests at Stake Continue to Outweigh the SEC's Right of Access**

As the Second Circuit instructed, even if this Court makes relevancy determinations, it cannot order production before balancing the SEC's right of access against the privacy interests at issue. *Rajaratnam*, 622 F.3d at 181, 182 (privacy interests at issue dictate that SEC's right of access is "not absolute"). At this point in the proceedings, the privacy interests at stake continue to outweigh the SEC's right of access.

As an initial matter, Judge Holwell's finding that the communications at issue were lawfully intercepted does not, as the SEC suggests, "eliminate" the privacy concerns that underlie the Second Circuit's opinion in this matter. *See* Pl.'s Mem. of Law in Support of Its Renewed Motion to Compel Production of Relevant, Legally Obtained Wiretapped Communications ("Br.") at 11. To the contrary, nowhere does the Second Circuit state that such concerns, including concerns for Mr. Rajaratnam's privacy, would be eliminated if Judge Holwell denied Mr. Rajaratnam's motion to suppress. Instead, the Second Circuit made clear that "the evident desire of Congress to limit disclosures of the fruits of even *lawful* wiretapping[] must be weighed carefully before discovery is ordered." 622 F.3d at 185 (emphasis added). That observation is entirely consistent with that court's prior jurisprudence, which recognizes that privacy interests remain even after denial of a motion to suppress. *See In re New York Times*, 828 F.2d 110, 116 (2d Cir. 1987) (commending district court that denied motion to suppress for its continuing concern with protecting Title III privacy rights of defendants and others). Here,

---

communications relate to only five of the ten stock allegations that the SEC made with respect to Mr. Rajaratnam – Akamai, AMD, Clearwire, eBay, and PeopleSupport. The other five stocks identified by the SEC do not have relevant wiretapped communications.

the SEC's request encompasses communications having nothing to do with the charged conduct. The SEC cannot plausibly claim that Mr. Rajaratnam has no cognizable privacy interest in such irrelevant communications.

As the Second Circuit further noted in *New York Times*, the "job of protecting such [privacy] interests rests heavily upon the shoulders of the trial judge, since all the parties who may be harmed by disclosure are typically not before the court." *Id.* That language is equally applicable here. The SEC has demanded that Mr. Rajaratnam produce each and every communication concerning a public company or its stock, as well as communications "between, among or concerning any sources of information about public companies" and concerning "any trades made, directed, discussed or recommended by any of said defendants or their affiliates." Br. at 12. By their inclusion of undefined and potentially limitless terms such as "sources of public information" or "affiliates," these requests most likely encompass communications with innocent third parties who have not been charged with any wrongdoing and are not before the Court. It is those parties for whom the Second Circuit expressed the utmost concern. *See Rajaratnam*, 622 F.3d at 187 (noting that disclosure of such irrelevant conversations would infringe privacy rights of "hundreds of individuals . . . without furthering any legitimate countervailing interest").

Furthermore, the SEC fails to acknowledge that any intercepted communications produced to it will also have to be produced to any other defendant who requests them. No protective order can fully guarantee that there will be no further disclosure. Now, on the eve of Mr. Rajaratnam's criminal trial, his constitutional right to a fair trial merits maximum protection. *See In re New York Times*, 828 F.2d at 116 (discussing the importance of considering defendant's fair trial rights prior to ordering disclosure of Title III materials).

8

Nor have privacy concerns been eliminated because there has been, as the SEC asserts, "a substantial public disclosure in criminal charging documents of key intercepted conversations by defendants" and "these intercepted conversations have received widespread publication in the national and international media."  Br. at 21.  In other words, the SEC's response to the many unlawful and grievous violations of Mr. Rajaratnam's privacy rights and those of others is to compound those violations with further violations, such as the SEC's extensive quotation of Title III materials in its brief.  Br. at 15-17.  Allowing further infringement of privacy interests is not the procedure endorsed by the Second Circuit in *New York Times*, 828 F.2d at 116, where the court recognized that defendants' privacy interests merited protection even after much of the Title III material at issue had been publicized.

Finally, the SEC asserts, without any support, that privacy concerns are "diminished" here because "most" of the communications sought are business-related, rather than personal.  The Federal Rules make no distinction between various forms of communications, and thus district courts must be vigilant in protecting litigants and third parties from discovery that implicates their privacy rights, no matter what type of information is at issue.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) (declaring that the "Rules do not distinguish between public and private information" and that district courts are charged with protecting anyone whose privacy interests may be implicated by overly broad discovery requests).

It is clear that the privacy interests at stake continue to outweigh (at least until the criminal trial) whatever right of access the SEC may have to the requested communications.  At stake are:  (1) Mr. Rajaratnam's constitutional right to a fair trial in the criminal case; (2) his privacy interest in communications that are not yet and may never be part of the public record; and (3) the privacy rights of innocent third parties who are not before the Court.  As a result, Mr.

Rajaratnam requests that the Court deny the SEC's motion at least until the conclusion of the criminal trial.

### C. The SEC Request for Wiretapped Communications is Overbroad and Seeks Irrelevant Materials to Which it is Not Entitled

If the Court reaches the merits of the SEC's motion, its request is significantly overbroad. In this very case, the Second Circuit declared, that "the SEC does not have a right of access to irrelevant conversations, *even if lawfully intercepted* because [Mr. Rajaratnam's] possession of these conversations would not benefit [him] in preparing for the civil trial." *SEC v. Rajaratnam*, 622 F.3d at 187 (emphasis added). Ignoring that common-sense instruction, the SEC's motion to compel seeks precisely that to which it has no right and which it claimed it would not seek— irrelevant conversations. Before the Second Circuit, the SEC represented that its request would "exclude all non-relevant communications, including *obviously* all communications with third parties involving matters unrelated to the charged civil and criminal conduct." *See* Brief of Appellee, SEC v. Rajaratnam, No. 10-464 (2d Cir. May 24, 2010) at 8 (emphasis added). Later in the same brief, the SEC refined its definition of relevance, asserting that it "does not seek materials that are not relevant to its claims." *Id.* at 55. Now that Mr. Rajaratnam's motion to suppress has been denied by Judge Holwell, the SEC has made a startling about-face from that position.

While the SEC purports to divide relevant materials into seven categories,[4] it is more accurate to describe them as falling within two exceedingly broad categories: (1) any

---

[4] According to the SEC, "relevant" communications will include "by and large" all communications:

> (1) concerning the companies and stocks alleged in the pleadings to have been subject to insider trading; (2) between, among or concerning any sources of information about public companies for any of the defendants named in the pleadings; (3) concerning any

communications relating to Mr. Rajaratnam's business, and (2) any communications concerning any investigation of any of the defendants or "concerning insider trading generally."  Br. at 12. There is no conceivable relevance to any materials that might fall within the second of the two categories, and virtually no limit to the breadth of materials that might fall within the first category.  The SEC is essentially attempting to expand the issues in this litigation, despite the fact that one of the purposes of discovery is to narrow, not expand the issues.  *Weinstein v. Erenhaus*, 119 F.R.D. 355, 357 (S.D.N.Y. 1988).

Nowhere is the unreasonableness of the SEC's request more apparent than in (1) its fifth category, which asks for communications regarding any trades made by or on behalf of any defendants or their "affiliates," a term it does not define, and (2) its sixth category, defined as "all communications . . . concerning any public company or its stock."  Br. at 12.  Perhaps these might be reasonable requests if Mr. Rajaratnam were a doctor who occasionally dabbled in the stock market, but he is not.  He is the manager of a hedge fund whose business was to trade in the stock of public companies, and to do so at a high volume across a broad spectrum of public companies.  The trades at issue in this case comprise but a minuscule fraction of all the trades Galleon executed during the period the wiretaps were in place.  Mr. Rajaratnam has not been charged with wrongdoing in connection with every one of Galleon's stock trades during that

---

relationships between and among any of said defendants and between and among any of said defendants and any of their sources of information about public companies; (4) concerning any trading strategies and practices of any of said defendants; (5) concerning any trades made, directed, discussed or recommended by, or on behalf of, any of said defendants or their affiliates; (6) concerning any public company or its stock; and (7) concerning any federal, state or local criminal, regulatory or other investigations or inquiries concerning any of the defendants or concerning insider trading generally.

Br. at 12.

period, and the SEC cannot and does not provide any substantive basis for seeking what amounts to all of Mr. Rajaratnam's business-related communications.  Possession of the many irrelevant materials falling within the SEC's request will not benefit any party in preparing for the trial in this case, and need not be produced.  *Rajaratnam*, 622 F.3d at 187.

Moreover, the breadth of the SEC's requests could conceivably encompass communications relating to conduct alleged in the criminal case but not alleged in this proceeding.  To the extent the SEC's request seeks such communications, it must be denied. Denial of Mr. Rajaratnam's motion to suppress is not tantamount to a determination that all of the intercepted communications are relevant in the criminal case, let alone this one.  While the two cases were virtually identical when first brought, the criminal case has since expanded greatly.  Thus, much of what may be relevant in the criminal case is not relevant in *this* case, and the SEC can have no claim to discovery beyond that which Judge Holwell eventually receives into evidence regarding the specific stocks named in the Second Amended Complaint.  That the SEC wishes that its case had expanded along with the criminal case is of no consequence—it must live with the Complaint it filed, not the Complaint it wishes it had filed.  In any event, the additional criminal charges against Mr. Rajaratnam pertain to attempted insider trading and conspiracy to attempt to engage in insider trading.  Even if the SEC had not rushed to file its Complaint when it did, it could not have brought similar charges here, as there exist no similar civil causes of action.  There can be no question that the SEC is not entitled to discovery regarding claims it did not bring and could not bring.

The only conceivable reason for seeking the broad swath of materials sought by the SEC is to obtain evidence to bring new claims against Mr. Rajaratnam.  That the SEC cannot do, and not only because the deadline to amend the complaint has long since passed, but because

"information relating to *potential* claims . . . is not within the typical scope of discovery" absent a showing of good cause.  *Guan Ming Lin v. Benihana Nat'l Corp.*, No. 10 Civ 1335, 2010 WL 4007282 at *3 (S.D.N.Y. Oct. 5, 2010) (emphasis in original), citing Fed. R. Civ. P. 26(b)(1) advisory committee's note.  Your Honor recognized that discovery is not a means of investigating additional claims at the very first status conference in this matter, where the SEC attempted to assert that its investigation was ongoing, and Your Honor responded, "I thought you brought a lawsuit because you were prepared to go forward with your lawsuit."  The SEC then assured the Court that it was prepared to go forward with its lawsuit.  *See* Transcript of Conference at 4-5, Nov. 4, 2009, attached hereto as Exhibit A.  It is now obvious that the SEC was not prepared to go forward, but it cannot use an overbroad discovery request to force Mr. Rajaratnam to heal its self-inflicted wound, especially here, where the Commission has made no attempt to show good cause entitling it to the discovery it seeks.  It has simply declared, without any basis, that all of the recordings it seeks are relevant.  That is not any cause at all, let alone good cause.  *See also Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir. 1975) (stating district court "properly denied" plaintiff's discovery motion made prior to his filing of a more definite statement, and which sought "virtually the entire business history of defendants," even though complaint alleged only one fraudulent transaction).  Likewise here, where the SEC has alleged specific acts of insider trading against Mr. Rajaratnam, it is not entitled to all of his business-related communications.

**D.  The SEC is Not Entitled to apply a Double-Standard Regarding the Scope of Discovery**

The SEC's request for wiretapped communications demonstrates a desire to inappropriately broaden the scope of discovery, rather than create the "level playing field" it

claims to seek.[5]  Br. at 14.  With respect to the discovery requests propounded by Mr. Rajaratnam

and the other defendants, the SEC has insisted upon limiting the scope of the requests to the four

corners of the Complaint.  For example, when Mr. Rajaratnam sought forensic images of key

witness Roomy Khan's computers, which were in the SEC's possession, the Commission

objected and wrote to this Court to say it had "agreed to produce materials from those images

that are relevant to this action" and that it had already produced more than 17,000 emails

resulting from the SEC's search for relevant materials in those computers.  *See* 2/9/10 Ltr. from V.

Szczepanik to Hon. J. Rakoff, attached hereto as Exhibit B.  In a footnote, the SEC listed the

search terms it had crafted to retrieve those "relevant" materials – each and every one of which

pertained to the specific conduct alleged in its Complaint.  *Id.*  Likewise, when Galleon

propounded interrogatories to the SEC seeking information about public companies such as

Avaya, Inc., Axcan Pharma, Inc., 3Com, and Schering-Plough, among others, the SEC objected

on the ground that those interrogatories sought non-relevant information, *i.e.*, "information

concerning allegations not contained in the Amended Complaint."  *See* SEC's Responses and

Objections to Defendants' Interrogatories at 17-22 (Dec. 16, 2009), attached hereto as Exhibit C.

---

[5] In support of its "level playing field" argument, the SEC cites three cases in which wiretaps were used in civil tax proceedings over a quarter century ago.  *See Fleming v. United States*, 547 F.2d 872 (5th Cir. 1977); *Griffin v. United States*, 588 F.2d 521 (5th Cir. 1979); *Spatafore v. United States*, 752 F.2d 415 (9th Cir. 1985).  Each of those cases involves the use of wiretap information by civil tax authorities *after* they had become part of the public record in criminal proceedings.  *See Fleming*, 547 F.2d at 875 ("We hold only that evidence derived from communications lawfully intercepted as part of a bona fide criminal investigation that results in the taxpayer's conviction may properly be admitted in a civil tax proceeding, at least when the evidence is already part of the public record of the prior criminal prosecution."); *Griffin*, 588 F.2d at 526 (identical to *Fleming*); *Spatafore*, 752 F.2d at 416-17 (wiretaps were "already part of the record in the criminal case").  Moreover, there is nothing in any of those cases indicating that the district court conducted a pre-disclosure balancing of  the privacy rights of the persons whose communications were intercepted against the federal agency's right of access.  There can be no question that this Court has been instructed to balance those rights here.  *See Rajaratnam*, 622 F.3d at 187 n.29.

Mr. Rajaratnam agrees that the scope of discovery should not include "information concerning allegations not contained in the [Second] Amended Complaint."

In an implicit acknowledgement of the overbreadth of its request, the SEC suggests that it is entitled to a broader scope of discovery than private plaintiffs because of the "compelling public interest" in seeing that the SEC enforces " the nation's securities laws and protecting the integrity of its markets."  Br. at 18.  The cases the SEC cites in support of its purported right to overbroad discovery are unavailing.  *United States v. Rural Elec. Convenience Cooperative Co.*, 922 F.2d 429, 440 (7th Cir. 1991) which the SEC cites for the proposition that the "government's interest is in large part presumed to be the public's interest," has nothing to do with the scope of discovery, but with whether the district court could, at an intervening federal agency's request, enjoin two state court proceedings.  Nor does the Commission find any support in *SEC v. Dorozhko*, 606 F. Supp.2d 321, 327 (S.D.N.Y. 2008), vacated on other grounds, 574 F.2d 42 (2d Cir. 2008), which sets forth the unremarkable proposition that the SEC bears a lesser burden than a private litigant to secure a preliminary injunction.  What the SEC fails to acknowledge is that in the case *Dorozhko* cites in support of that proposition, the Second Circuit explains that the Commission bears a lesser burden because "SEC suits for injunctions are creatures of statute" whereas a private action is "rooted wholly in the equity jurisdiction of the federal court."  *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975) (internal quotations omitted).

By contrast, no statute entitles the SEC to discovery broader than that which is available to Mr. Rajaratnam or any other defendant.  The Commission is bound by the same Federal Rules of Civil Procedure applicable to every other litigant, and courts have held that a government agency is not entitled to discovery "well outside the bounds of disclosure required" by the Federal Rules.  *Resolution Trust Corp. v. Grant Thornton*, 41 F.3d 1539, 1548 (D.C. Cir. 1994).

That mandate first came from the United States Supreme Court, which long ago made it clear that "[t]he Government as a litigant is . . . subject to the rules of discovery."  *United States v. Procter & Gamble*, 356 U.S. 677, 681 (1958).  Thus, there is no justification for the overbreadth of the SEC's request, and this Court may exercise its discretion to limit the Commission's requests to materials relevant to *this* case.  *See In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 111 (2d Cir. 1998) (holding that District Court properly exercised its discretion in limiting scope of plaintiffs' discovery requests); *Segan*, 513 F.2d at 696 (district court properly limited plaintiff's discovery requests to information relating to the specific conduct alleged in the complaint).

III.    **CONCLUSION**

For the foregoing reasons, the SEC's Renewed Motion to Compel Production of Relevant,

Legally Obtained Wiretapped Communications should be denied.[6]

Dated:  January 5, 2011

By:      /s/ William E. White

John M. Dowd (admitted *pro hac vice*)
Terence J. Lynam (admitted *pro hac vice*)
William E. White (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave, NW
Washington, DC 20036
(202)887-4000


Robert H. Hotz, Jr. (RH-4456)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212)872-1000

*Attorneys for Raj Rajaratnam*

---

[6]     If the Court were to order the production of relevant wiretapped communications
before the end of the criminal trial, Mr. Rajaratnam requests that the Court also issue a protective
order to prevent the dissemination and disclosure of those communications.  We would request
that such a protective order explicitly prohibit the SEC from sharing (in whole or part) relevant
wiretapped communications with anyone outside of the SEC at least through the conclusion of
the criminal trial.  As the Court may be aware, this case has generated significant media coverage.
That coverage has included information about the case that has been frequently sourced
anonymously to government sources close to the investigation.  While Mr. Rajaratnam has no
reason to believe that the SEC staff assigned to this litigation provided information to the media,
a blanket prohibition against sharing the information with third parties would help ensure that Mr.
Rajaratnam's Sixth Amendment rights are preserved.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2011, the foregoing document and accompanying

Memorandum of Law was filed with the Clerk of the Court and served via ECF and email upon

counsel to the following parties and participants:

**Valerie A. Szczepanik**
Securities and Exchange Commission
New York Regional Office
3 world Financial Center, Suite 400
New York, New York 10281-1022

**Adam S. Hakki**
Shearman & Sterling LLP
599 Lexington Ave.
New York, NY 10022

**Norman A. Bloch**
Thomson Hine LLP
335 Madison Avenue, 12th floor
New York, NY 10017-4611

**Robert G. Morvillo**
Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.
565 Fifth Avenue
New York, NY 10017

**Alan R. Kaufman**
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

**Ted Altman**
DLA Piper LLP
1251 Avenue of the Americas, 27th Floor
New York, NY 10020

**Kenneth I. Schacter**
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022

**Steven R. Glaser**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

**David Wikstrom**
26 Broadway, 19th Floor
New York, New York 10004

**Francisco J. Navarro**
Kobre & Kim LLP
800 3rd Ave.
New York, NY

**Jeffrey L. Bornstein**
K&L Gates LLP
Four Embarcadero Center, lih Floor
San Francisco, CA 94111

**Harlan J. Protass, Esq.**
Law Offices of Harlan J. Protass, PLLC
305 Madison Avenue
Suite 1301
New York, NY 10165

**Cynthia M. Monaco**
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York 10020

**Roland G. Riopelle, Esq.**
Sercarz & Riopelle, LLP
152 W. 57th Street, Suite 24C
New York, NY 10019

**Frederick L. Sosinsky**
45 Broadway, 30th Floor
New York, NY 10006-3007

**Kenneth Breen**
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022

**Adler Bernard**
Dornbush Schaeffer Strongin & Venaglia, LLP
747 Third Avenue, 11th Floor
New York, NY 10017

/s/ William E. White_____
John M. Dowd (admitted *pro hac vice*)
Terence J. Lynam (admitted *pro hac vice*)
William E. White (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave, NW
Washington, DC 20036
(202)887-4000

Robert H. Hotz, Jr. (RH-4456)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212)872-1000

*Attorneys for Raj Rajaratnam*