UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SECURITIES AND EXCHANGE COMMISSION  :
                                    :      09 Civ. 8811 (JSR)
              Plaintiff,            :
                                    :      OPINION AND ORDER
         -v-                        :
                                    :
RAJ RAJARATNAM, et al.,             :
                                    :
              Defendants.           :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

Pending before the Court is the motion of the Securities and Exchange Commission ("SEC") for summary judgment against one of the few remaining defendants in the above-captioned insider trading case, Raj Rajaratnam.[1] The SEC alleges that the defendant engaged in a massive insider trading scheme, using his position as head of Galleon Management Co., a multi-billion dollar hedge fund, to trade on material, nonpublic information in violation of Section 10(b) of the Securities and Exchange Act of 1934 and Section 17(a) of the Securities and Exchange Act of 1933. See Amended Complaint ("Am. Compl.") ¶ 1. Specifically, the instant motion seeks summary judgment against Rajaratnam with respect to his alleged insider trading on shares of Intel Corp., Clearwire Corp., Akami Technologies, Inc., ATI Technologies, Inc., and PeopleSupport, Inc. See Plaintiff Securities and Exchange Commission's Memorandum of Law in Support of Its Motion for

---

[1] Although the SEC's motion also sought summary judgment against defendant Galleon Management LP, the SEC and Galleon subsequently settled, and the Court issued a final consent judgment against Galleon on October 27, 2011.

Summary Judgment Against Defendants Raj Rajaratnam and Galleon Management, LP ("SEC Br.") at 1. The motion seeks disgorgement, prejudgment interest, injunctive relief, and civil penalties.

The motion was filed October 7, 2011. On October 13, 2011, in the parallel criminal case, Judge Holwell sentenced Rajaratnam to 11 years in prison, ordered him to forfeit $53.8 million, and fined him an additional $10 million in criminal penalties. See United States v. Rajaratnam, 09 Cr. 1184 (S.D.N.Y. Oct. 20, 2011). Accordingly, in his instant answering papers, filed October 17, 2011, Rajaratnam conceded that, because of the criminal conviction, he was collaterally estopped from contesting liability for insider trading on the five stocks here in issue, and that he did not oppose having an injunction entered against him based on this liability. Opposition to Plaintiff's Motion for Partial Summary Judgment on Behalf of Raj Rajaratnam ("Def. Opp. Br.") at 1. For its part, the SEC conceded that, in light of Judge Holwell's imposition of a $53.8 million forfeiture judgment against defendant, its request for $31.6 million in disgorgement was moot. See Transcript of 10/27/11 Oral Argument ("Tr.") at 2-3. Accordingly, the only remaining issue on this motion is whether to impose additional civil penalties against defendant Rajaratnam, and if so, in what amount.

Section 21A of the Exchange Act authorizes district courts to assess civil penalties in the nature of fines against persons who commit insider trading. 15 U.S.C. § 78u-1. The statute states that the amount of the penalty shall be determined by the Court "in light of the facts and circumstances." 15 U.S.C. § 78u-1(a)(2). While this is a broad mandate, courts in this District have typically considered such factors, for example, as "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." SEC v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007) (citing SEC v. Coates, 137 F. Supp. 2d 413, 429 (S.D.N.Y. 2001)).

The amount of any financial penalty in any parallel criminal action may also be relevant. Defendant, indeed, argues that, given the financial penalties imposed by Judge Holwell in the criminal case, further civil penalties are unwarranted. See Def. Opp. Br. at 5-8. This misapprehends both the nature of this parallel proceeding and the purposes of civil penalties. The foremost focus of any criminal punishment is on the defendant's

3

moral blameworthiness and on the prison time thus merited. While the concern with blameworthiness may also bear on the monetary aspects of a criminal sentence (such as the fine), more often, as in the case of restitution and disgorgement, they are designed to compensate victims and deprive the defendant of his ill-gotten gains. By contrast, as the Court stated at the October 27 hearing, SEC civil penalties, most especially in a case involving such lucrative misconduct as insider trading, are designed, most importantly, to make such unlawful trading "a money-losing proposition not just for this defendant, but for all who would consider it, by showing that if you get caught . . . you are going to pay severely in monetary terms." See Tr. at 28-29.

Here, the Court, at the request of the parties, has reviewed the portions of the Pre-Sentence Report in the parallel criminal case that set forth the defendant's net worth, which considerably exceeds the financial penalties imposed in the criminal case. When to this is added the huge and brazen nature of Rajaratnam's insider trading scheme, which, even by his own estimate, netted tens of millions of dollars and continued for years, this case cries out for the kind of civil penalty that will deprive this defendant of a material part of his fortune. See Plaintiff's Reply Memorandum of Law In Support of Its Motion for Partial

4

Summary Judgment Against Defendants Raj Rajaratnam and Galleon Management, LP ("SEC Reply Br.") at 10-13.

The question then becomes, how much? The SEC seeks the maximum available penalty under the statute, which provides that the Court may impose a penalty of up to, but no more than, "three times the profit gained or the loss avoided." 15 U.S.C. § 78u-1(a)(2). The Court agrees that this case meets every factor favoring trebling. See Haligiannis, 470 F. Supp. 2d at 386.

The statute, however, further defines "profit gained" or "loss avoided" as "the difference between the purchase or sale price of the security and the value of that security as measured by the trading price of the security a reasonable period after public dissemination of the nonpublic information." 15 U.S.C. § 78u-1(f). Once trebling is accepted, the key point of contention between the parties here is over what is the correct measure of "profit gained" and "loss avoided."

Defendant argues that the proper measure of "profit gained" or "loss avoided" is the amount of such profit or loss directly attributable to the advantages reaped from possessing the insider information illegally obtained, as opposed to profits or losses attributable to other, lawful market events. See Def. Opp. Br. at 8-11. In support of its argument, defendant includes an "event study" performed by Professor Gregg A. Jarrell, an expert witness

5

in the criminal case. Def. Opp. Br. Ex. B, Declaration of Gregg A. Jarrell ("Jarrell Decl."). Based on statistical modeling, Professor Jarrell concludes that the profit attributable directly to the non-public information defendant possessed is $22,300,551, Jarrell Decl. ¶ 24, a figure substantially less than the more than $30 million calculated by the SEC. See SEC Br. at 18.

In a private civil securities action, such an approach, and such an "event study" calculation, might be appropriate. But here it has no place, because Congress has decreed that the definition of "profit gained" or "loss avoided" for purposes of SEC civil penalties is "the difference between the purchase or sale price of the security and the value of that security as measured by the trading price of the security a reasonable period after public dissemination of the nonpublic information." 15 U.S.C. § 78u-1(f). By its plain language, Congress instructed the Court not to eliminate from the calculation of "profit gained" or "loss avoided" any amount attributable to market factors other than the defendant's inside information. Rather, once the Court identifies the trading price of the security at a "reasonable period after public dissemination of the nonpublic information," the Court should simply calculate the difference between that price and the price the defendant paid for that security in order to arrive at the profit gained or loss avoided. In so

6

prescribing, Congress doubtless intended to avoid the very uncertainties and complexities defendant here seeks to introduce, as well as to adhere to the hoary principle that a wrongdoer takes his victim (here, in effect, the market) as he finds it. In any event, the statutory language of Section 21A is crystal clear and must be obeyed.

Defendant next argues that because he was personally entitled to only a portion of the profits actually realized from the illegal trades he executed, the SEC's figure should be reduced to the amount he personally gained. Def. Opp. Br. at 12. On this approach, if one were to subtract from the profits made on defendant's illegal trades the portion of profits that went to Galleon (and thus its investors), as opposed to the percentage of the profits defendant was personally entitled to through management fees, his profit was only $4,725,150. Id. at 13. But nothing in the text of the Section 21A supports this evasion, in effect, of defendant's responsibility, for the wrongdoing he committed, and defendant cites no case law supporting this improbable interpretation.

The statute does, however, leave one open question: how long is a "reasonable period after public dissemination of the nonpublic information"? 15 U.S.C. § 78u-1(f). At oral argument, defense counsel objected to the SEC's use of defendant's actual

7

realized gains in arriving at its base figure for the civil penalty, as opposed to using the hypothetical "reasonable period." Tr. at 7. In response, the SEC offered a calculation the Government prepared for Judge Holwell in the criminal sentencing proceeding, utilizing a 24-hour period after the dissemination of the inside information as a "reasonable period." Id. at 5-6. Defendant agreed that under Second Circuit precedent "within a day of the announcement is generally [a reasonable period]." Id. at 8 (citing SEC v. Patel, 61 F.3d 137, 140 (2d Cir. 1995)).

But even with this agreement, the parties cannot arrive at agreement on the base figure. The SEC says it is $33,512,929, while the defendant says it is $30,935,235. Compare Plaintiff's Post-Argument Supplemental Memorandum In Support of Plaintiff's Motion for Partial Summary Judgment Against Defendant Raj Rajaratnam ("SEC Supp. Br."), at 3, with Letter Brief of Defendant Raj Rajaratnam dated Nov. 4, 2011. Although the reasons for this difference are differences over what is the appropriate method for calculating the day-after figure in this case, the Court determines that it need not resolve these somewhat technical differences, since for present purposes the Court can accept the lower figure and still fulfill all the purposes of a civil penalty in this case. Specifically, the Court determines that these purposes can all be achieved by a trebling of the base

8

figure as long as that trebling results in a fine amount of at least $90,000,000.

Accordingly, the Court trebles the defendant's figure of $30,935,235 and arrives at a civil penalty of $92,805,705, which is hereby imposed. Defendant is ordered to make this payment, no later than 14 days after entry of the accompanying Final Judgment as to Defendant Raj Rajaratnam, by certified check, bank cashier's check, or United States postal money order made payable to the United States Securities and Exchange Commission. This civil penalty is entirely in addition to the forfeiture and other financial payments ordered by Judge Holwell and may not be used to offset those payments in any respect. Finally, defendant Raj Rajaratnam is hereby permanently enjoined from violating Section 10(b) of the Exchange Act, Rule 10b-5 promulgated thereunder, and Section 17(a) of the Securities Act.

The Court retains jurisdiction of this matter for purposes of enforcing the terms of this Order and of the Final Judgment as to Defendant Raj Rajaratnam filed contemporaneously herewith. The Clerk of the Court is hereby directed to close document number 232 on the docket sheet of this case.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
November 8, 2011